16603

ROGERS v. ROGERS *ET AL.*
(two cases)
70 S. E. (2d) 637

Baker, A. A. J., and Taylor, J., dissented on rehearing.

362

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellants,* cite:

*Messrs. J. B. Gibson,* of Dillon, and *Samuel Want,* of Darlington, *for Respondent,* cite:

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellants, in Reply,* cite:

March 17, 1952.

Rehearing Denied May 12, 1952.

OXNER, Justice.

By agreement of counsel, these two actions were consolidated and are now before this Court on question relating solely to the construction of the wills of J. R. Rogers and A. Maude Hamer. In the order of consolidation, it was stipulated that all other issues raised by the pleadings should be reserved until the wills were construed.

J. R. Rogers died in February, 1946, leaving of force a will dated November 28, 1944, and a codicil thereto dated February 22, 1945. The controversy here relates primarily to what estate in the personal property was given by the testator to his unmarried sister-in-law A. Maude Hamer, in Item VI of this will. Appellants contend that Miss Hamer acquired only a life estate, with the right to use and consume any portion of said personal property during her lifetime, and with the testamentary power to appoint among a limited class those who would take by remainder, which power of appointment appellants assert was never executed

by her. Respondents contend that Miss Hamer acquired an absolute estate in the personal property, without any condition, qualification or limitation, and that she was fully empowered to dispose of same by will or otherwise in any way she saw fit.

In order to properly construe Item VI, it will be necessary to refer briefly to the other portions of the will and also to the codicil.

In Items I, II and III, the testator directs that his debts and funeral expenses be paid as soon as practicable, provides for the upkeep of his cemetery lot, and authorizes his executors to purchase and install a set of chimes in the tower of a church at Latta, Dillon County. In Item IV a tract of land containing 82 acres is devised "in fee simple" to A. Maude Hamer. In Item V the testator's residence is devised to A. Maude Hamer "in fee simple", with the request that upon her death she give said property to his brother, L. B. Rogers, in the event he desires this place for a home, but if not, that Miss Hamer give the residence to such niece or nephew of the testator as will live in the house and maintain it as a home. Item VI, which is the focal point of this controversy, is as follows:

"All my personal property of every kind and description including money, bonds or other evidence of indebtedness, I give and bequeath to my sister-in-law, A. Maude Hamer, absolutely with the right to use the said personal property absolutely as her own during her lifetime. However, I request her, prior to her death, to make a will bequeathing the said personal property in such amounts as she may desire to my brothers, L. B. Rogers, A. McKeithan Rogers, to my nephews, Lott T. Rogers, Fred Rogers and William Rogers, Jacob Rhodes Rogers, Luther Rogers, Dan Rogers and the other children of L. B. Rogers and A. McKeithan Rogers. In case of the death of any of the brothers or nieces or nephews mentioned either individually or as a class then she is to divide the property as she sees fit among the survivors. I ask her to give especial consideration to Lott T. Rogers

for his aid to his father in helping him carry his indebtedness and his interest in his business. The devise, however, is subject to the special devises hereinafter mentioned." Item VII reads:

"All the rest, residue and remainder of my property of every kind and description I give to my sister-in-law, A. Maude Hamer, for and during the term of her natural life.

"These bequeaths and devises to my said sister-in-law are made for the reason that for many years she has lived with me and my wife, who was her sister, and during that long illness of my wife and during my various illnesses, she has waited on and cared for us as devotedly as any daughter could have done and to a greater extent than any of my own people."

In Item VIII the testator directs that upon the death of his sister-in-law, A. Maude Hamer, certain stipulated sums, aggregating $2,600.00, be given to various nephews and nieces named therein, which amount he states is "to be paid out of the personal property of my estate on the death of the said A. Maude Hamer and her power to bequeath by will is limited to this extent". Under Items IX, X and XI, upon the death of A. Maude Hamer, two tracts of land are devised to testator's brother, A. McKeithan Rogers, and one tract, each, to his nephew, Jacob Rhodes Rogers, and his brother, L. B. Rogers. Under Item XII, provision is made for the disposition of the property given in the three preceding items to A. McKeithan Rogers, L. B. Rogers and Jacob Rhodes Rogers in the event either of said devisees predeceased A. Maude Hamer.

Finally, the testator appoints his brother, L. B. Rogers, and his sister-in-law, A. Maude Hamer, executor and executrix of his will.

The codicil, which was executed about three months after the will, consists of four items. In Item I the testator gives to his brother, L. B. Rogers, his interest in a warehouse. In Item II he directs his executors to sell certain real estate,

stated by him not to have been covered by his will, with a provision that the proceeds of same "shall become a part of my personal estate and is bequeathed as is the balance of my personal estate in the will above referred to." In Item III it is provided that in the event A. Maude Hamer does not leave a will effective at the time of her death, the residence described by the testator in Item V of his will should go to his brother, L. B. Rogers. Item 1V is as follows:

"Upon the same condition, that is to say, in case my said sister-in-law, A. Maude Hamer, does not leave a will effective at the time of her death, it is my will and desire that my executors herein named shall divide all of my personal property into twelve equal shares, one share of which I give to my brother, L. B. Rogers; one share to my brother, Mc-Keithan Rogers; two shares to my nephew, Lott Rogers; one share to my niece, Sarah Rogers; one share to my nephew, Fred Rogers; one share to my nephew, William Rogers; one share to my nephew, L. B. Rogers, Jr.; one share to my nephew, Tom Berry Rogers; and the final share to my niece, Jane Rogers Sellers. Should any of my nieces or nephews or my brothers above named predecease either me or my sister-in-law, A. Maude Hamer, the personal property is to be divided in the same proportions as above set forth among the survivors; provided, such niece or nephew does not leave children, him or her surviving, in which case the bequest is to go to such child or children."

It is elementary that the cardinal rule of construction ▉ is to ascertain and effectuate the intention of the testator, unless that intention contravenes some well-settled rule of law or public policy. While there are certain rules of construction to be followed in seeking such intention, they are subservient to the paramount consideration of determining what he meant by the terms used in his will. *Peoples National Bank v. Harrison,* 198 S. C. 457, 18 S. E. (2d) 1. The same underlying principle was stated by Chief Justice Marshall in *Smith v. Bell,* 6 Pet. 68, 8 L. Ed. 322, as follows: "The first and great rule in the exposition of

wills (to which all other rules must bend) is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules, of law". There is a growing tendancy among the courts to apply, *not merely to affirm preliminarily,* the principle that in the construction of a will all of the provisions are to be considered and given effect so far as possible, and the true intent gathered from the four corners of the instrument. Perhaps the best approach to the problem before us is to undertake to ascertain the intention of the testator "unobscured by the fault of technical learning", and without reference to any set of abstruse and arbitrary rules. After doing so, we can then see whether there are any rules of law requiring a modification of the conclusion reached.

The record does not disclose the value of the estate passing under this will. Evidently it was very substantial. Although not shown by the record, it is fair to assume that the testator had no children. Undoubtedly there was a deep sense of gratitude on his part for the attention and consideration extended to him and his wife by his unmarried sister-in-law, to whom he was apparently devoted. He obviously intended to generously provide for her comfort, maintenance and support as long as she lived but having done so, concluded that consideration should be given to his own relatives. Only a small portion of the real estate was given Miss Hamer in fee. Most of it was devised to her for life. In so far as the personal property was concerned, he intended that Miss Hamer should have the right to use same "absolutely as her own during her lifetime", with the testamentary power to appoint among a limited class those who would take by remainder. In Item VIII he requested that upon the death of Miss Hamer, certain legacies should be paid "out of the personal property of *my* estate", showing that he considered any personal property not used or consumed by Miss Hamer to be a part of his estate and not hers. A like intent is found in Item IV of the codicil, where the testator provides that in the event Miss Hamer "does not leave a will effective at

the time of her death", his executors "shall divide all of *my* personal property into twelve shares   *   *   *". By Item IV of the codicil, the testator sought to provide for the disposition of his personal property upon the death of Miss Hamer in the event that she did not execute the power of appointment given in Item VI of the will.

Does the foregoing construction violate any public policy or rule of law? The Court below held that Miss Hamer acquired the personal estate free of any restriction or qualification. In doing so, the Court concluded that the bequest in Item VI of the personal property to Miss Hamer "absolutely" created an absolute estate, which was not cut down or qualified by any subsequent provisions; that the superadded words, "with the right to use the said personal property as her own during her lifetime", were intended merely to indicate to Miss Hamer the unqualified rights which the testator intended to devolve upon her; that the requests following this language consisted merely of precatory words imposing no obligation and wholly inadequate to diminish the absolute estate previously created; and that such estate was not cut down by Item IV of the codicil. Moreover, the Court held that the condition named in this codicil that the bequests therein should only be effective in the event that Miss Hamer did "not leave a will effective at the time of her death" had been met, she having since died leaving a will.

There is no doubt of the soundness of the rule to the effect that a bequest or devise in terms sufficient to unequivocally give the property absolutely or in fee will not be deemed cut down by subsequent language which is less clear and distinct than that of the original gift. *Wates v. Fairfield Forest Products Co., Inc.,* 210 S. C. 319, 42 S. E. (2d) 529; *Schroder v. Antipas,* 215 S. C. 552, 56 S. E. (2d) 354; *Power v. Power,* 219 S. C. 56, 64 S. E. (2d) 14. It is equally well settled that an estate devised in fee cannot by subsequent limitation be stripped of its legal incidents, and where it appears that the controlling intention

is to give an absolute estate, subsequent language inconsistent therewith must be held ineffective. "But before this doctrine may be invoked, it must appear clearly, from a reading of the whole will, that testator's intention was to vest in the first taker an estate of absolute ownership. The use of words of restriction after language which in itself would be sufficient to create an absolute estate may of course be evidence—to be considered with other provisions in the will—of an intent to create a less estate." In *re Byrne's Estate,* 320 Pa. 513, 181 A. 500, 502. The Court there summed up the applicable principles as follows: "If the intention of the testator is to be given effect, as it must be, courts must be permitted, considering each case separately, to hold ineffective words of restriction and to enforce an absolute estate, where such an estate was intended, or conversely, to disregard words of absolute gift and to declare the estate created to be a limited estate where a clear intention to that effect appears."

The word "absolute", when used in connection with a gift or devise of personal or real property, is ordinarily interpreted as carrying the fee or absolute estate. *Fuller v. Missroon,* 35 S. C. 314, 14 S. E. 714. But the word has no fixed or unvaried meaning that must prevail in every case even though contrary to the intent of the testator as disclosed by reading the will as a whole in the light of the surrounding circumstances. *Hills v. Hart,* 136 Conn. 536, 72 A. (2d) 807. To illustrate, in *Smith v. Bell, supra,* the language of the will was: "I give to my wife, Elizabeth Goodwin, all my personal estate  *  *  *  to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin". In an opinion by Chief Justice Marshall, it was held that the gift over indicated an intent to restrict the previous estate and that, as to certain slaves, the wife had but a life estate.

Reverting now to Item VI of the will, if the first sentence had stopped after stating that all the personal property was given and bequeathed "to my sister-in-

law, A. Maude Hamer, absolutely", unquestionably the personal estate would have been given to Miss Hamer absolutely, without any qualification or condition. But there immediately follows, "with the right to use the said personal property absolutely as her own during her lifetime." This phrase becomes entirely superfluous if the testator intended by the use of the word "absolutely" preceding it to vest complete ownership in Miss Hamer. It was stated at the bar of this Court by counsel for respondents that this will was drawn by the prominent attorney whose name appears as one of the witnesses. If so, this is an added reason why some effect should be given to the super-added words. We are no more at liberty to disregard these words than we are to disregard the word "absolutely" preceding them. Evidently the testator intended by the use of the word "absolutely" that during her lifetime Miss Hamer was to have the unqualified right to use the personal property as she saw fit. When Item VI is considered in connection with the remainder of the will, particularly the provisions heretofore mentioned, we think that the testator only intended to give his sister-in-law a life estate in the personal property. But any doubt thereabout is entirely removed by Item IV of the codicil, the terms of which are not of doubtful import but clearly indicate that the testator did not intend that Miss Hamer should have more than a life estate. Under the construction of the will adopted by the Court below. Item IV of the codicil becomes entirely ineffective.

"It is within the power of a testator to give property ██ ██ to another for life with full power of disposing of the principal during his life and by will at his death, and yet what is given is a life estate coupled with a power and not an absolute gift of personal property or a devise in fee of real estate." *Dallinger v. Merrill*, 224 Mass. 534, 113 N. E. 279, 282. It is well established in this State that the fact that a life estate is given to one coupled with the power to consume the corpus does not enlarge the estate into a fee or an absolute estate. *Scott v. Burt*, 9 Rich Eq. 358;

*Dye v. Beaver Creek Church,* 48 S. C. 444, 26 S. E. 717; *Lynch v. Lynch,* 161 S. C. 170, 159 S. E. 26, 80 A. L. R. 997. Also, see annotations in 36 A. L. R. 1177 and 76 A. L. R. 1153. In a footnote to *In re Byrne's Estate, supra,* there is quoted the following from Gray, Restraints on Alienation (2d Ed.), Section 74b-d: "If you give a man a fee simple, you cannot provide that if he does not sell or devise it it shall go to T., but if you give him a life estate with power to appoint by deed or will, and in default of appointment to T., the gift to T. is perfectly good." The last-named illustration is applicable to the facts of this case.

It follows from the foreging that we are in accord with the construction of the will advanced by appellants. This conclusion was reached after careful examination of the cases cited in the circuit decree and in respondents' brief, including *Canedy v. Jones,* 19 S. C. 279; *Howze v. Barber,* 29 S. C. 466, 7 S. E. 817; *Bank of Charleston v. Dowling,* 52 S. C. 345, 29 S. E. 788, which seem to be the decisions most strongly relied upon by the Court below. It would unduly prolong this opinion to review these cases and it would serve no useful purpose to do so for, as stated by Chief Justice McIver in the *Canedy case:* "* * * While a decided case may aid us in ascertaining the rules of construction, unless it is in every respect like the one under consideration, which rarely happens, it cannot be allowed to have a controlling effect; inasmuch as the object should be in every case to ascertain the intention of the testator from the words which he had used, and unless the language to be construed is identical in both cases, the authorities cited, though it may aid us in reaching a proper conclusion, cannot be regarded as absolutely controlling."

While not apposite, the case of *Forrest v. Jennings,* 107 S. C. 117, 92 S. E. 189, tends in some degree to sustain the construction which we have adopted.

There remains for consideration the will of Miss Hamer, who died in December, 1946, or about ten months after the death of J. R. Rogers, leaving of force a will dated April

23, 1946. Miss Hamer directed that legacies aggregating $4,200.00 be paid to five named nieces and nephews of J. R. Rogers and made bequests aggregating $26,000.00 to various charitable, educational and religious associations and institutions. She devised to Luther B. Rogers the 82 acre tract of land and the residence acquired by her under Items IV and V of the will of J. R. Rogers. The residue of the estate is then devised and bequeathed to Mae Berry Rogers and Luther B. Rogers.

The only controversy with reference to the will of Miss Hamer is whether it had any effect upon the personal estate left by J. R. Rogers. Having concluded that Miss Hamer acquired only a life estate therein, it follows that she could not dispose of same by will. The remaining question is whether her will constitutes an execution of the power of appointment given to her under Item VI of the will of J. R. Rogers. The record does not disclose the size of the estate left by Miss Hamer, nor what property she possessed apart from that acquired by her from J. R. Rogers. There is no reference in her will to said power of appointment, nor is there anything in her will from which it may be fairly inferred that she was undertaking to execute such power. The case of *Thomson v. Ehrlich,* 148 S. C. 330, 146 S. E. 149, fully sustains the conclusion that the residuary clause in Miss Hamer's will does not constitute an execution of the power of appointment mentioned. This case is cited in an annotation in 91 A. L. R. at page 454. In this connection, the argument is made by respondents that the bequests in Item IV of the codicil of J. R. Rogers were conditioned on Miss Hamer's failing to leave a will "effective at the time of her death", and that this condition has been met, she having died leaving of force a will. But we think the quoted words contemplated a will by Miss Hamer executing the power of appointment given her by J. R. Rogers, and not a will merely disposing of her own estate. The pertinent part of the residuary clause of Miss Hamer's will reads: "All of the rest and residue of my property and estate, whe-

ther real or personal or mixed and wheresoever the same may be situate, I will, devise and bequeath, share and share alike, unto my friends, Mae Berry Rogers and Luther B. Rogers, Sr." Presumably her intention by this provision was merely to dispose of the residue of her own estate. It certainly does not constitute an execution of the power of appointment to dispose of the personal estate of J. R. Rogers. Moreover, the Court below held, which is not challenged by respondents, that the testamentary language contained in Item VI of the will of J. R. Rogers "either creates merely a life estate or an absolute estate. If the former the directions contained in Item IV of the codicil would control. If the latter the power of appointment of course would be wholly superfluous." Having concluded that only a life estate was created, it follows that the "directions contained in Item IV of the codicil would control."

The order appealed from is reversed and the two cases are remanded for further proceedings in accordance with the views herein expressed.

FISHBURNE, STUKES, and TAYLOR, JJ., and G. BADGER BAKER, A. A. J., concur.

Order Denying Petition for Rehearing.

FISHBURNE, STUKES and OXNER, Justices.

In respondents' petition for a rehearing, it is contended that in reaching the conclusion that Miss Hamer's will does not constitute an execution of the power of appointment given to her under Item VI of the will of J. R. Rogers, we overlooked Section 8928 of the Code of 1942. It is argued that this statute, which was enacted in 1930, changes the rule declared in *Thomson v. Ehrlich,* 148 S. C. 330, 146 S. E. 149. The statute mentioned is as follows:

"A general devise of the real estate of a testator or testatrix, or of the real estate of said testator or testatrix in any place or in the occupation of any person mentioned in his or her will, or otherwise, described in a general manner, shall be construed to include any real estate, or any

real estate to which such description shall extend, as the case may be, which he or she may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear upon the face of the will; and in like manner a bequest of the personal estate of the testator or testatrix or any bequest of personal property described in a general manner, shall be construed to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he or she may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear upon the face of the will."

Counsel for respondents frankly state in the petition for a rehearing:

"This statute was not referred to in the briefs of counsel for either the respondents or the appellants. As to counsel for the respondents, the failure to refer to the statute was due to overconfidence in the belief that Miss Hamer obtained an absolute estate, rather than a life estate under Item VI of the will of J. R. Rogers. The rules relating to the method of exercising a power of appointment were in that light mistakenly considered irrelevant."

The question now brought to the attention of the Court, having not been presented to or passed upon by the Court below and having not been made as a substaining ground by respondents, cannot be raised for the first time on a petition for a rehearing.

Accordingly, we do not undertake to determine whether the statute mentioned applies to a limited power of appointment such as is involved in this case.

In addition to the foregoing, the contention now made is wholly inconsistent with the following holding in the circuit court decree, which has not been challenged on this appeal by respondents:

"The testamentary language involved in this case either creates merely a life estate or an absolute estate. If the

former, the directions contained in Item IV of the codicil would control. If the latter, the power of appointment of course would be wholly superfluous."

For the foregoing reasons, the petition for a rehearing is denied.

TAYLOR, Justice, and G. BADGER BAKER, Acting Associate Justice (dissenting order on motion for rehearing).

With the greatest deference we cannot concur in the order refusing a rehearing of this cause.

As shown by the original opinion filed, this Court relied upon the case of *Thomson v. Ehrlich,* 148 S. C. 330, 146 S. E. 149, as sustaining "the conclusion that the residuary clause in Miss Hamer's will does not constitute an execution of the power of appointment" conferred upon Miss Hamer in the will of J. R. Rogers. The petition for a rehearing calls attention to the fact that the case cited brought about the enactment of a statute, Code, Sec. 8928, which provides— contrary to the ruling made by this Court in the *Thomson case* and in this case—that the usual form of residuary clause in a will is sufficient to constitute the exercise by the testator of a power of appointment.

The reversal by the General Assembly of the rule laid down in the *Thomson case* changes the whole aspect of the present case on the point now under discussion, and legislates into the law of this State a rule of property which should be given effect.

We recognize that conceivably there could be questions as to the applicability of the statute to the present case and as to the effect of the statute upon the decision of this Court. Such considerations, however, should not deter the Court from determining now that the basis of the Court's opinion should be re-examined.

Reasons of public and judicial policy which transcend the technical rules invoked in the order overruling the petition for rehearing require, in our opinion, that probable error

in the statement by the Court of a rule of property should be corrected by the orderly procedure which is made available in situations of that character, to wit, by the granting of a rehearing.

If this case had been terminated by the opinion orginally filed, and if the matter before the Court were an application to *reopen* the case, a different situation would be presented. But the case is still, open. We cannot concur in the view that because the conception of a case on the part of counsel differs from the conception of the Court, resulting in a failure of counsel to cite and of the Court to note a statute of the State which may be controlling in the premises, the Court should reject an opportunity to correct the situation, especially when the matter in question is one which relates to an important phase of the law relating to the testamentary disposition of property.

For the reasons above stated, it is our opinion that the Court should deal with the applicability of the statute invoked by the respondent, by calling for a reargument of the cause. See Supreme Court Rule No. 4, Sec. 8: *Becker v. Uhe,* S. C., 70 S. E. (2d) 346.