THE NEW ENGLAND TRUST COMPANY, ET AL.
*vs.*
ELIZABETH M. SANGER, ET AL.

Penobscot.   Opinion, November 4, 1955.

*James M. Gillin,*
*Palmer, Dodge, Gardner & Bradford,* for plaintiffs.

*Eaton, Peabody, Bradford & Veague,*
*Bingham, Dana & Gould,*
*Verrill, Dana, Walker, Philbrick & Whitehouse,*
*Spencer, Stone & Mason,* for defendants.

FELLOWS, C. J.   This is a bill in equity brought by The New England Trust Company of Boston, Massachusetts, Sabin P. Sanger, 2nd, of Wellesley, Massachusetts, and Glenna R. McCurdy of Bangor, Maine, as trustees under Article Seventeenth of the Will of Dr. Eugene B. Sanger late of Bangor, Penobscot County, Maine, deceased.  The bill is brought against Elizabeth M. Sanger, Eugene B. Sanger, 3d, and James D. M. Sanger of Framingham, Massachusetts, Richard G. Averill of Wellesley, Massachusetts, Constance S. Averill of Schenectady, New York and Sabin P. Sanger, 2nd, individually, of Wellesley, Massachusetts.  This bill in equity alleges that the plaintiffs are in doubt as to the disposition of the proportional share of the principal of the trust created thereby, represented by the share of Eugene B. Sanger, Jr., son of the testator and now deceased.  The case comes to the Law Court on report of the evidence taken June 2, 1955 before a single Justice of the Supreme Judicial Court in Penobscot County.  The Law Court is to render such final decision, on so much of the evidence as is legally admissible, as law and equity require.

The evidence shows that Dr. Eugene B. Sanger, a physician and surgeon of Bangor, Maine, died on September 11, 1945, testate.  His will was allowed in the Probate Court for Penobscot County, Maine, September 25, 1945.  At the time of his death, Dr. Sanger left as his next of kin two sons and a daughter, viz.: Eugene B. Sanger, Jr., Charlotte S. Averill, and Sabin P. Sanger, 2nd.  The daughter, Charlotte S. Averill, died on September 26, 1947 leaving two children born to

her (now of age) named Richard G. Averill and Constance S. Averill. Eugene B. Sanger, Jr., died on January 16, 1954, leaving as his widow Elizabeth B. Sanger (now Elizabeth M. Termini) and two children (minors legally adopted by him in Massachusetts by decree of the Middlesex County Probate Court, June 21, 1946). The adopted children are named Eugene B. Sanger, 3d and James D. M. Sanger, who are represented by duly appointed guardian *ad litem,* and by counsel.

The will of Dr. Sanger, disposing of his large estate, is a lengthy document (1) providing for payments of debts and taxes, (2) care of cemetery lot, (3) gift to Congregational Church $1500 in memory of his deceased wife Ethel Field Sanger, (4) to his three children jewelry, household furniture and personal effects formerly of their mother, (5) to his children a division of certain specified household furnishings, (6) medical and surgical library and instruments to a friend, (7) authority to executors to settle agreement made by him May 28, 1940 with divorced wife, (8) to his three children a division of certain shares of stock, (9) a gift to daughter Charlotte Sanger Averill of $10,000, (10) the sum of $50,000 to his son Eugene B. Sanger, Jr., (11) a trust fund of $50,000 for benefit of son Sabin P. Sanger, 2d, (12) to his grandson Richard G. Averill $5,000, (13) to his granddaughter Constance S. Averill $5,000, (14)-(15)-(16) bequests to friends and employees, (17) (The contested paragraph) : The rest, residue and remainder to trustees in trust for his three children—annual income divided equally and paid during their lives—the principal vesting proportionately at death of a child in "lineal descendants" or if none, in "his or her heirs at law," with a gift to the Eastern Maine General Hospital if on "the death of the last survivor of my children there shall be surviving no lineal descendants of mine," (18) a provision that children cannot alienate or anticipate principal and income, (19) nomination

of personal representatives. The will is dated August 22, 1945. The present value of the trust, under Article 17 of the will, is more than $700,000. The share now in dispute is one-half of the value.

Under this trust provided for in the Seventeenth paragraph of the will, the income from the residue of Dr. Sanger's estate was to be divided equally among his three children, Eugene B., Jr., Sabin P., 2d, and Charlotte Averill. The said Seventeenth paragraph, after naming the trustees, and stating their authority, provides as follows:

(1) "The net annual income arising from said trust shall be divided among my said three children and paid over to them in quarter-annual installments, as near as may be, during their respective lives."

(2) "Upon the death of any one of my children leaving lineal descendants, said trust shall cease as to the proportional share of the principal of said trust represented by said deceased child's share in the income of the trust at the date of such death and shall vest at once in such lineal descendants per stirpes and not per capita."

(3) "If any of my said children should die, leaving at the time of such death no lineal descendants, then such part of the trust fund as would have vested in such lineal descendants, had any such existed, shall vest free of any trust in his or her heirs at law."

(4) "If, upon the death of the last survivor of my children, there shall be surviving no lineal descendants of mine, then all that portion of the principal of this trust that shall not have vested previously, I give, bequeath and devise to the Eastern Maine General Hospital, of Bangor, Maine, for the erection of a surgical building with operating rooms, to be known as the Sanger Surgical Building."

The plaintiff trustees in their bill in equity state their doubts in this manner:

"That your plaintiffs are in doubt as to the proper construction of said Article Seventeenth of the will of said Dr. Eugene B. Sanger insofar as it relates to the disposition of the proportional share of the principal of the trust created thereby represented by the share of Eugene B. Sanger, Jr., deceased, as it relates to the income thereof at the date of his death, and with respect to the person or persons in whom said proportional share of the principal of said trust has vested and who are entitled to receive such proportional share of the principal of said trust; and are particularly in doubt as to the following:"

"(a)  Whether said Eugene B. Sanger, Jr. left surviving him 'lineal descendants,' within the meaning and intent of those words as used in Article Seventeenth of the will of the testator Dr. Eugene B. Sanger, in whom the said Eugene B. Sanger, Jr.'s proportional share of the principal of said trust represented by his share in the income thereof at the date of his death vested, free of trust, upon his death; and if so just what person or persons are his 'lineal descendants' in the premises."

"(b)  Whether if said Eugene B. Sanger, Jr. left him surviving no 'lineal descendants,' within the meaning and intent of those words as used in Article Seventeenth of the Will of the testator Dr. Eugene B. Sanger, then just what person or persons are his 'heirs-at-law,' within the meaning and intent of those words as used in Article Seventeenth, in whom said Eugene B. Sanger, Jr.'s proportional share of the principal of said trust represented by his share in the income thereof at the date of his death vested, free of trust, upon his death."

"(c)  Just what person or persons are entitled to receive distribution of said Eugene B. Sanger, Jr.'s proportional

share of the principal of said trust represented by his share in the income thereof at the date of his death, and of the income accruing thereon from the date of the death of said Eugene B. Sanger, Jr."

The plaintiff trustees in their brief further and also say:
"There exists doubt, under the Maine decisions, whether, under a will like Dr. Sanger's, adopted children shall be regarded as a life tenant's 'lineal descendant.' In determining whether under Dr. Sanger's will the adopted children of Eugene, Jr., were his 'lineal descendants' the case of *Warren* v. *Prescott,* 84 Me. 483, 24 Atl. 948, is not conclusive of the question, although it did hold an adopted child to be a 'lineal descendant' for the purposes of the 'lapse' statute with respect to an adopting parent who died before the testatrix. The trustees are reasonably in doubt how far some of the language and possible implications of that case may be applicable to the language of Dr. Sanger's will."

"If the adopted children of Eugene, Jr., are not 'lineal descendants' of Eugene, Jr., within the meaning of Dr. Sanger's will, the trustees are reasonably in doubt, under the existing Maine cases, whether, under Dr. Sanger's will, the adopted children should be considered as 'heirs at law' of Eugene, Jr."

The following claims of the parties present the questions for decision:

It is the contention of the defendants Sabin P. Sanger, 2nd (son), and Constance and Richard Averill (children of the deceased daughter) that the children adopted by Eugene B. Sanger, Jr., on June 21, 1946, are neither his "lineal descendants" nor his "heirs at law" within the meaning of the testator's will. These defendants also claim that since Eugene B. Sanger, Jr. had no children born to him during his lifetime, these defendants, Sabin P. Sanger, 2nd, Constance

Averill and Richard Averill (as his only surviving son and the only children of his deceased daughter) are entitled to take the share of the principal from which Eugene B. Sanger, Jr. received the income during his lifetime. They claim they are Eugene B. Sanger, Jr.'s only "heirs at law," and that Eugene's adopted children are not "his heirs at law."

On the other hand, the defendants Eugene B. Sanger, 3d and James D. M. Sanger say that their claim, as legally adopted children of Eugene B. Sanger, Jr., to the trust property rests on two propositions. In the first place, they claim they take as "lineal descendants" of their adoptive father under *Warren* v. *Prescott*, 84 Me. 483 (which holds that a legally adopted child takes a legacy as lineal descendant under a statute passed to prevent a lapsed legacy). In the second place, these defendants claim that if they are not "lineal descendants," they take as Eugene B. Sanger, Jr.'s "heirs at law."

The defendants, Eugene B. Sanger, 3d and James D. M. Sanger, further claim that if the court finds an ambiguity in the will, and looks to drafts of prior wills, the change made in this will from a prior will, which substituted the words "heirs at law" for the prior phrase "children . . . . . and in the lineal descendants of a deceased child," is without sensible meaning unless they, as adopted children, are intended.

The controlling rule in the construction of a will is that the intention of the testator *expressed in the will,* if consistent with rules of law, governs. *U. S. Trust Co.* v. *Douglass,* 143 Me. 150; *Mellen et al.* v. *Mellen et al.,* 148 Me. 153, 157, and cases there cited.

Intention is to be ascertained from examination of the whole instrument. It is the intention of the maker of the will at the time of its execution. *Gorham* v. *Chadwick, et al.,*

135 Me. 479, 482; *Merrill Trust Co.* v. *Perkins et al.,* 142 Me. 363; *Bryant* v. *Plummer,* 111 Me. 511.

In case of doubt the intention is to be ascertained in the light of the existing conditions, which may be supposed to have been in testator's mind. *Cassidy* v. *Murray,* 144 Me. 326; *U. S. Trust Co.* v. *Douglass,* 143 Me. 150.

The principle is stated by this court in *Cassidy* v. *Murray,* 144 Me. 326—"It is the intention of the testator which must prevail in the construction of a will. But that intention must be found from the language of the will read as a whole illumined in cases of doubt by the light of the circumstances surrounding its making."

And in a recent case where one of the questions concerned the identification of a legatee, this court said: "If the language in a will is doubtful, or ambiguous, conditions existing when the will was made may be considered, if they were known to the testator and 'may be supposed to have been in the mind of the testator.'" *In Re Knapp's Estate,* 149 Me. 130.

It is well established in this state that the use of a technical word, in the absence of clear evidence to the contrary, leads to the presumption that the testator intended such word in its technical legal sense. *Jacobs* v. *Prescott,* 102 Me. 63, 65; *Houghton* v. *Hughes,* 108 Me. 233, 237.

". . . Whether or not such a result will follow from the use of the language quoted, must depend upon the intention of the testator as disclosed by all of the provisions of the will examined in the light of such attending circumstances and manifest objects as may reasonably be supposed to have been in the contemplation of the testator at the time of making the will, such as the condition of his family and the situation and amount of his property." *Bodfish* v. *Bodfish,* 105 Me. 166, 172.

"In construing a will, it is proper to read it in the light of surrounding conditions, the relations between the testator and his intended beneficiaries, the amount and nature of his estate, and other relevant circumstances which legitimately tend, in cases of doubt, to show the probabilities of his intentions, one way rather than another." *Tapley* v. *Douglass,* 113 Me. 392, 394.

"In the construction of a will, parol testimony is frequently of some assistance for the purpose of identifying the beneficiary, or the subject matter of the devise, or explaining the situation and circumstances surrounding the testator at the time of making the will to be construed, or for the purpose of throwing some light upon the sense in which words of doubtful and ambiguous meaning were used. But the testator's declarations of intention, whether made before or after the making of the will, are alike inadmissible." *Bryant* v. *Bryant,* 129 Me. 251.

The court has recognized that each will presents, or may present, unique problems of interpretation, and that, where interpretation is necessary, a precedent with respect to one will may be of slight help in construing another will, and the intent of another testator. *U. S. Trust Co.* v. *Douglass,* 143 Me. 150, 159, 56 Atl. (2nd) 633; *Abbott* v. *Danforth,* 135 Me. 172, 177, 192 Atl. 544; *Strout* v. *Little River Bank & Trust Co.,* 149 Me. 181, 185, 99 Atl. (2nd) 342, 344.

Revised Statutes 1954, Chapter 158, Section 40—Legal effect of adoption of child—By such decree the natural parents are divested of all legal rights in respect to such child and he is freed from all legal obligations of obedience and maintenance in respect to them; and he is, for the custody of the person and the right of obedience and maintenance, to all intents and purposes the child of his adopters, with right of inheritance when not otherwise expressly provided in the decree of adoption, the same as if born to them in law-

ful wedlock, except that he shall not inherit property expressly limited to the heirs of the body of the adopters nor property from their collateral kindred by right of representation, and he shall stand in regard to lineal descendants of his adopters in the same position as if born to them in lawful wedlock; but he shall not by reason of adoption lose his right to inherit from his natural parents or kindred; and the adoption of a child made in any other state, according to the laws of that state, shall have the same force and effect in this state, as to inheritance and all other rights and duties as if said adoption had been made in this state according to the laws of this state. If the person adopted died intestate, his property acquired by himself or by devise, bequest, gift or otherwise before or after such adoption from his adopting parents or from kindred of said adopting parents shall be distributed according to the provisions of chapter 170, the same as if born to said adopting parents in lawful wedlock; and property received by devise, bequest, gift or otherwise from his natural parents or kindred shall be distributed according to the provisions of said chapter 170, as if no act of adoption had taken place. (Chapter 170 above referred to, contains statutory rules of descent of real and personal property to children and other blood relatives.)

It is well settled that the status of the adopted child is fixed by the law of the adoption but the adopted child's rights of inheritance shall be determined by the law of the state of inheritance. The Maine Court in *Wyman, Appellant,* 147 Me. 237, 243 said: ". . . but the question whether an adopted child (irrespective of where he is adopted) can inherit and the extent of such right of inheritance, will be determined, not by the law of the state where the adoption took place, but by the law of the state where the property is located, or by the law of the domicile of the decedent, as the case may be . . ."

An adopted child was held not to be a "child" within the intention of a testator who provided a gift in remainder after a life estate to three children of X and provided further that, if one of them should die before the life tenant, "that the *child* or *children* of said deceased child" shall receive the parents' share. *Woodcock's Appeal,* 103 Me. 214, 68 Atl. 821.

It has been held that in a deed from a grantor, not the adopting parent, a gift to the "child or children" did not include an adopted child, in the absence of a contrary intent of the grantor appearing in the instrument. *Wilder* v. *Butler,* 116 Me. 389, 102 Atl. 110. Although *Wilder* v. *Butler* contains a comprehensive discussion of various statutes and decisions of Maine and Massachusetts, there is no Maine decision which decides that, in a case like the present one, a gift by a testator to A's "heirs at law," after a life estate to A, either includes or excludes adopted children of A.

For the purposes of inheritance from adopting parent, an adopted child, on the intestacy of his adopting parent, is treated, however, as an "heir at law." *Latham, Appellant,* 124 Me. 120, 126 Atl. 626. Cases in other jurisdictions which deal with the problem, appear to reach various and sometimes conflicting results, dependent on the facts of particular cases and the statutes within the jurisdiction.

This Maine statute by its terms makes the adopted child in relation to his adopting parents the same as a child of blood. *Gatchell et al.* v. *Curtis et al.,* 134 Me. 302. Indeed the court in *Warren* v. *Prescott,* 84 Me. 483 at page 487, recognizing the effect of the adoption statute, specifically said: "By adoption, the adopters can make for themselves an heir . . . . ."

This reasoning is further spelled out in *Wilder* v. *Butler,* 116 Me. 389 at 392, where the court recognized that "the

statute of adoption makes the adopted child inherit from its adopters in the same manner as children born to them in lawful wedlock . . . . . and to that extent constitutes a part of the statute of descent."

This reasoning was affirmed by this court as recently as 1952 when it said, in *Wyman, Appellant,* 147 Me. 237 at 241, "see *Warren* v. *Prescott,* 84 Me. 483, 24 Atl. (2nd) 948, which settled the proposition that by adoption the adopters could make themselves an heir. . . . ."

Neither *Woodcock's Appeal* nor *Wilder* v. *Butler* (both excluding adopted children as "child or children") are contrary. It is readily apparent that a person using the word "children" in a will in no way invokes the statutes of descent and distribution. The word "heirs at law," on the other hand, means those who would take in the event of intestacy. Furthermore, this court has decided that the use of a technical word in a will means an interpretation according to the technical sense of the word. The use of the word "heirs at law" invokes law of intestate inheritance.

We are aware that our court has said, in construing the intention of the Legislature, that an adopted child within the meaning of a "lapse" statute was a "lineal descendant," and that an adopted child may take a devise or legacy given by will to one of his adopting parents, and thus prevent a lapsing where the adopting parent dies before testator, but we do not consider the case of *Warren* v. *Prescott,* 84 Me. 483, 24 Atl. 948, applicable here. The words "per stirpes and not per capita" also tend to show that the intention of this testator as to this provision was to the contrary.

The words in Dr. Sanger's will that follow the foregoing provision relative to "lineal descendants," present the problem in this case. The will says if "no lineal descendants" then "such part of the trust fund shall vest free of any trust

in *his or her heirs at law."* Lineal descendants, if any, are provided for in the preceding paragraph. The will then says "heirs at law." It does not say "child." It does not say "my lineal descendants." It does not say "my heirs at law." It does not say "his heirs at law who are also my lineal descendants." It does not say "excluding an adopted child." It does not say "heirs." It states positively "his heirs at law."

When parties reasonably disagree on the meaning and intention of a testator who has made a complicated will, the court must determine from the words in the will the probable intention. Courts can only deal in probabilities where intention is in question, but if there is doubt or ambiguity, evidence outside the will may assist in finding the probabilities.

So in relation to the will of Dr. Sanger, the will itself shows that the testator, who by the record was proved to be a person of legally sound mind, was anxious to treat all his three children and their families equally. He divides in three parts furniture and furnishings of his house. He divides personal belongings such as jewelry. He gives to his son Eugene $50,000. He makes a trust of $50,000 for his son Sabin, the son to have the annual income and to receive the principal when he arrives at the age of 30 years. He gives $10,000 to his daughter Charlotte Averill with an explanation that if she thinks this amount less generous than to the sons, for her to remember the trust "heretofore created in her behalf." To each of the two children of Charlotte Sanger Averill (Richard G. Averill and Constance S. Averill, his grandchildren) he gives $5,000 for education.

The residuum of his estate he gives to these plaintiffs (and his now deceased son Eugene, and to Frank G. Averill who resigned) as trustees, to invest and reinvest, and to pay the income quarter-annually to his three children during

their lives. He says in this Paragraph Seventeen: "Upon the death of any one of my children leaving lineal descendants, said trust shall cease as to the proportional share of the principal of said trust represented by said deceased child's share in the income of the trust at the date of such death, and shall vest at once in such lineal descendants per stirpes and not per capita." Then he says: "If any of my said children should die, leaving at the time of such death no lineal descendants, then such part of the trust fund as would have vested in such lineal descendants, had any such existed, shall vest free of any trust in his or her heirs at law."

The testator here has designated the persons who take and in whom his property is to vest if his deceased child has no lineal descendants. The will says it is to vest in the deceased child's heirs at law. Who are the heirs at law of Eugene B. Sanger, Jr.? The statute says that having legally adopted Eugene B. Sanger, 3d, and James D. M. Sanger, they are heirs at law of Eugene B. Sanger, Jr.

In effect the testator has said by the terms of his will that he desired to care for the future of his children. Beyond his children, his real interest ceased. He knew no unborn child, and had only the desire to care for lineal descendants if there were any. Otherwise, he designates that his property shall go to those whom the statutes might then designate. He does not give anything to any grandchild that he did not know. The will does not mention adopted children and it is not necessary that it should. The will does not exclude them. They take because he said "his or her heirs at law" and the statute makes adopted children heirs at law.

To our minds there is no doubt or ambiguity, but if it should be considered that there is doubt or ambiguity in the provision relative to "his or her heirs at law," and all the admissible evidence is considered because of that doubt or

ambiguity, we find that the testator knew when he made the will that the two children (named Eugene B. Sanger, 3d and James D. M. Sanger) were living with his son and daughter in law, Mr. and Mrs. Eugene B. Sanger, Jr., and that adoption was being seriously considered as natural children could not be expected. We find that previous wills had practically the same paragraph relating to this trust, except that a previous will did not say "heirs at law," and instead provided that "if any of my said children should die, leaving at the time of such death no lineal descendants, then such part of the trust fund as would have vested in such lineal descendants had any such existed, shall vest free of any trust in my children then living, and in the lineal descendants of a deceased child by right of representation."

It can well be argued that the change to "heirs at law" of a child from the previous "my children then living and the lineal descendants of a deceased child" was made to care for possible adoption. The change was certainly not made to exclude those whom the testator knew might be adopted.

Written words used by one person, though carefully chosen, may or may not exactly convey to the one who reads them the ideas and intentions of the writer. Spoken words often so disguise our true thoughts that one who hears them misunderstands, or misinterprets, the true meaning. So in a will, and especially a will that is extensive and complicated, it is a common experience that through the years of expectation the parties interested often understand and interpret words as human desires dictate. To a prospective legatee, hope teaches meaning, and financial expectation definitely indicates to him the true intention of the testator.

Dr. Sanger who executed this will, with its many provisions, undoubtedly endeavored to properly and clearly convey his desires to the scrivener in the first instance. The scrivener endeavored to put into the document those inten-

tions as he understood them. Dr. Sanger well knew the meaning and effect of all the provisions of his will because the attorneys that he employed were very capable and very careful, and undoubtedly explained all legal terms, as was their duty, if the legal terms were not already known to the testator. By the testator's signature, as maker of the will, Dr. Sanger has adopted the scrivener's words as written. The words in the will are Dr. Sanger's words.

If all the words in a will unmistakably convey to all readers the same ideas, there is no contest, but when it is possible to reasonably differ, the court may have difficulty in determining from the will, the probabilities of the intention of the testator.

A strong argument is made, and a most comprehensive brief filed by the able attorneys representing Sabin P. Sanger, 2nd (son of testator), Constance S. Averill and Richard G. Averill (grandchildren), with many cases cited from this and other jurisdictions, to the effect that there is a presumption of non-inclusion of adopted children when such words as "children," "issue," "lineal descendants" and the like, are used in the will. In each of the cases cited, however, the decision was made on what the court found to be the intention of the testator as expressed in the will, under the existing circumstances.

No case has been called to our attention, and we have found none, where the adoption statute is like that of Maine and property is left to the heirs at law of the adopting parent. Such a presumption as claimed, if it had existed in this case, would be overcome by the plain words regarding distribution of the proportion of the trust fund when a child dies. If any inconsistency existed in other paragraphs of the will, it could not affect the clear expression of intention contained in paragraph Seventeen. Paragraph Seventeen might well be considered a complete will in itself.

The argument of these attorneys for the surviving son and the children of the deceased daughter is, that "no matter what terminology was used, the adopted child is a stranger to the blood" and that as a consequence the common law presumption controls, in the absence of words being used such as "including an adopted child."

The answer is that *the statute includes* the adopted child as heir of the adopter, and the testator would have excluded the adopted if he had so intended. He said "his or her heirs at law." He does not say "child," "issue" or "descendant." Such construction is not "sentimentality for the adopted," as the attorneys have in effect stated in their brief. The court is not "sentimental" for adopted children. It is not "sentimental" over the "blood." Neither the adopted children nor any blood descendant accumulated this fortune for the testator. The court is not attempting to recognize the growing trend to select and adopt children, and the growing trend for legislatures to protect those adopted. This construction is only giving effect to the positive directions in the will, and recognizing the law of adoption passed by the Maine Legislature.

To one who has read this will of Dr. Sanger, and who is familiar with the adoption statute and the meaning of the phrase "his heirs at law," there is no doubt or ambiguity. The testator intended that if there was failure of lineal descendants when a child died, the proportional part of this trust should vest immediately in "his or her heirs at law." Legally adopted children are heirs at law of a deceased adopting parent.

The proportional part of this trust, from which Eugene B. Sanger, Jr. received benefit, in his lifetime, should be paid by the trustees to Eugene B. Sanger, 3d and James D. M. Sanger, as "his heirs at law." The adopted children being minors, payment should be made to a legally appointed

guardian or guardians. Any income which had accrued before the death of Eugene B. Sanger, Jr. and which was not paid to him in his lifetime, should be paid by the trustees to his executors, and the record apparently shows that it has been so paid. The income from Eugene B. Sanger, Jr.'s proportional part, that has accrued since the death of Eugene B. Sanger, Jr., belongs to his adopted children as his heirs at law.

These proceedings for the construction of this will being necessary for a proper disposition of the trust property, the expenses should be paid by the trustees from the body of the trust before any payment is made to the heirs at law, and before the amount of the proportional part is determined.

> *Decree to be made by the sitting Justice below in accordance with this opinion.*
>
> *The costs and expenses of each of the parties including reasonable counsel fees, to be fixed by the sitting Justice after hearing, and paid by the Trustees.*