**BAR HARBOR BANKING AND TRUST COMPANY, Trustee**

v.

**PREACHERS' AID SOCIETY OF the METHODIST CHURCH et al.**

Supreme Judicial Court of Maine.

July 31, 1968.

William Fenton and Hancock Griffin, Jr., Bar Harbor, for Bar Harbor Banking and Trust Co.

Beverly W. Spencer, Old Town, for Preachers' Aid Society.

Hale & Hamlin, by Charles J. Hurley, Ellsworth, Eaton, Peabody, Bradford & Veague, by Arnold L. Veague, Bangor, R. C. Masterman, Bar Harbor, and others.

Before WILLIAMSON, C. J. and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

DUFRESNE, Justice.

As trustee under indenture executed by Louise Fernald Goulding during her lifetime and as trustee under her last will duly probated and allowed in the Probate Court for the County of Hancock in this State, the Bar Harbor Banking and Trust Company (the Bank) brought the instant action under 14 M.R.S.A. § 6051(10) for the purpose of having the Superior Court determine whether the principal of the living trust which terminated with the death of Mrs. Goulding was payable to the testamentary trustee bank by reason of a proper and legal testamentary exercise by Mrs. Goulding of the power of appointment which she reserved to herself in the living trust, or whether the principal of said trust passed and was payable to her next of kin as provided therein in default of appointment. The deceased's next of kin were joined as parties defendants.

The single Justice below in the Superior Court found

"nothing in the language of the will, nor in the testimony of the witnesses who appeared at trial, or in the exhibits offered and admitted into the evidence, that would support the position that the language of the residuary clause as viewed in the light of all the circumstances surrounding the testatrix before and at the time of the execution of said will, was an exercise of the power of appointment as contained in the trust indenture, * * * The residuary clause of the will only operates to pass those assets remaining in the estate of the testatrix and does not reach the assets remaining in the trust,"

and passed a decree accordingly. Preachers' Aid Society of the Maine Conference of the Methodist Church, sole beneficiary of the testamentary trust, appeals.

On February 23, 1954 Mrs. Goulding, a resident of Southwest Harbor, Maine, established an inter vivos trust of most of her property. She conveyed her securities and some cash to the Bar Harbor Banking and Trust Company, a Maine corporation having its principal office in Bar Harbor, Maine, in trust to invest and reinvest the trust estate, collect the income, and after the payment of proper expenses and charges to pay the income to her during her lifetime on a monthly basis, and such additional amounts of principal as the trustee in its discretion might deem necessary for her maintenance, comfort and support. The trust was irrevocable but she expressed therein the right to deliver to the trustee, subject to the trust, additional property as she might so desire.

Of relevancy to the issue before us, she reserved to herself in the trust agreement the following power of appointment:

"Upon the death of the Settlor, the Trustee shall transfer and pay over the remaining principal of the trust estate free of trust to such person or persons and in such proportions and amounts as the Settlor may by her last will and testament direct or appoint, and in default of such direction or appointment, to transfer and pay over the remaining principal of the trust estate free of trust to those persons who would, at her death, under the intestate laws of the State of Maine then in force, be entitled to inherit personal property owned by her and in the proportion in which they would be entitled to share her personal property under said intestate laws."

At the date of the trust indenture Mrs. Goulding was a widow of advanced age with no children and to all appearances with prospective next of kin no more closely related than in the degree of second cousins. On October 14, 1953, approximately 4 months before the execution of the living trust, Mrs. Goulding had made a will to be referred to hereinafter as the first will, in which she appointed the plaintiff bank as executor. There is no evidence however indicating any participation by the bank's president in the executrix' execution of this will as does appear con-

cerning that of her later and last will. In this first will she remembered one only of her next of kin by bequeathing to Helen Elizabeth Fernald, daughter of her cousin Henry T. Fernald, deceased, all her jewelry, silver, Fernald heirlooms, pictures, piano and desk.

Of some pertinency to our present issue, however, is the residuary clause in this first will which reads as follows:

"FIFTH: I give, devise and bequeath all the rest, residue and remainder of my property real, personal and mixed, of which I may die seized or possessed, *or over which I may have testamentary control,* or to which I may be in any way entitled, of whatsoever the same may consist and wheresoever situated, including any legacies which may lapse or revert to my estate, to the Preachers Aid Society of the Maine Conference of the Methodist Church and their successors in office, to be held by them in trust, to be invested and reinvested, the income of the same to be used annually for the benefit of the aged and retired preachers of said conference, their widows and orphans. *This bequest is given in memory of my father, Rev. Oliver Haley Fernald, and my mother, Ruth Amelia Fernald, and is to be known as the Oliver Haley Fernald and Ruth Amelia Fernald Fund.*" (Emphasis added).

In making this first will, Mrs. Goulding had the benefit of counsel representation and advice. The evidence is silent concerning any intention of the testatrix at the time of the execution of her first will to later establish the living trust in which she reserved to herself the power to appoint the remaining principal of the fund at her death to such person or persons and in such proportions and amounts as she might direct or appoint by her last will and testament. However, the language of her residuary clause which bequeathed and devised all the rest, residue and remainder of her property "real, personal and mixed, of which I may die seized or possessed, *or*

*over which I may have testamentary control,* or to which I may be in any way entitled" was sufficiently broad and so indicative of testamentary exercise of any power of appointment, past, present or future, that, short of evidence compelling a finding of a contrary intent on her part, it may be inferred that Mrs. Goulding believed that from the very origin of the living trust to the date of the execution of her last will in 1961, her first will was an adequate testamentary declaration of intent to exercise her reserved power of appointment under the trust indenture.

By her second and last will dated June 20, 1961 Mrs. Goulding bequeathed her varied personal property among her several next of kin and remembered the Congregational Church with a monetary legacy, which she had not done in the first will, but more importantly for our present analysis she omitted from the residuary clause of her last will that language in the first will which we hereinbefore construed to be an express exercise of any power of appointment, past, present or future. The reference residuary clause in pertinent part reads as follows:

"FIFTEENTH: I give, devise, and bequeath all the rest, residue, and remainder of my estate, both real and personal, including the proceeds of all life insurance payable to my estate, my executor or administrator, and the money received by my estate for shares, or the shares themselves, in a loan and building association to my Trustee hereinafter named, its successor and successors, IN TRUST NEVERTHELESS, to be invested and reinvested, the income of the same to be paid to the PREACHERS AID SOCIETY OF THE MAINE CONFERENCE OF THE METHODIST CHURCH to be used annually for the benefit of the aged and retired preachers of said conference, their widows and orphans. This bequest is given in memory of my father, Rev. Oliver Haley Fernald, and my mother, Ruth Amelia Fernald, and is to be known as

the Oliver Haley Fernald and Ruth Amelia Fernald Fund."

The issue in the case is, whether Mrs. Goulding, the testatrix, by the above residuary clause of her last will, legally exercised the power of appointment reserved to herself in the living trust. Our answer is in the affirmative.

That a residuary clause, general in nature, will not *in and of itself* ordinarily suffice to indicate an intended exercise by the testator of a general testamentary power of appointment is the near unanimous consensus of judicial authorities, in the absence of statutory strictures to the contrary. Morgan Guaranty Trust Company of New York v. Huntington, 1962, 149 Conn. 331, 179 A.2d 604; In re Jeffers' Estate, 1959, 394 Pa. 393, 147 A.2d 402; Bank of New York v. Black, 1958, 26 N.J. 276, 139 A.2d 393; Carlisle v. Delaware Trust Co., 1953, 34 Del.Ch. 133, 99 A.2d 764; Rogers v. Rogers, 1952, 221 S.C. 360, 70 S.E.2d 637; Bussing v. Hough, 1946, 237 Iowa 194, 21 N.W.2d 587; Standley v. Allen, 1942, 349 Mo. 1115, 163 S.W.2d 1012; American Law Institute, 3 Restatement of Property, § 343; 41 Am.Jur., Powers, § 50; 72 C.J.S. Powers, § 40 c; Annotations, 91 A.L.R., p. 433, at pages 453 et seq.; 127 A.L.R., p. 248, at pages 257 et seq. This is generally known as the common law rule.

Massachusetts, on the other hand, without the benefit of legislation, has repudiated the common law doctrine in Amory & another v. Meredith & others, 1863, 7 Allen 397, and has adopted as a judicial canon of construction "that a general residuary clause will operate as an execution of a general testamentary power, unless a contrary intent is shown." Boston Safe Deposit & Trust Co. v. Painter, 1948, 322 Mass. 362, 366, 77 N.E.2d 409, 411, and cases cited; Second Bank-State Street Trust Co. v. Yale University Alumni Fund, 1959, 338 Mass. 520, 524, 156 N.E.2d 57, 60. The rule is otherwise in Massachusetts however where special testamentary powers are involved rather than general testamentary powers. See Fiduciary Trust Company v. First Nat. Bank of Colorado Springs, Colo., 1962, 344 Mass. 1, 181 N.E. 2d 6. Many states have passed statutes embracing the Massachusetts position. See Restatement Property, § 343, comment (d) (1948 supp.).

■ Where by irrevocable trust indenture Mrs. Goulding had placed the great bulk of her property in trust for her own benefit during her lifetime, unconditionally reserving to herself however the right and power generally to appoint the principal of said trust property by will, we must presume that any subsequent promulgation of a will was made by her in the light of such general testamentary power of appointment and the disposition of all her property by general residuary clause will sufficiently evidence her intention to make use of such reserved power and fully operate as an exercise thereof in the absence of evidentiary disclosure of a contrary intent, notwithstanding the absence of any reference to such power of appointment.

The force of such a presumption would undoubtedly evaporate in the face of evidentiary manifestations of a different intent. Indeed, "[s]uch presumptions, except as they may tend to produce some measure of certainty as to the meaning which will be judicially given to the words used by the testator in his will, merely state considerations which experience has shown are apt to be in the minds of testators, to be given such weight in a particular case as its circumstances justify; they are merely aids to construction which cannot prevail over an intent fairly deducible from the terms of the will read in the light of the surrounding circumstances." Trowbridge v. Trowbridge, 1941, 127 Conn. 469, 17 A. 2d 517, 519.

■ Furthermore, it is fundamental law that canons of construction or presumptions are resorted to and indulged in merely as judicial aids in the ascertainment of intent. In the testamentary field they help to fix the sense of testamentary lan-

guage otherwise obscure, uncertain or ambiguous. Specific rules of construction and presumptions must depend for their use and application upon the particular factual settings in which they are expected to operate. They must be so designed that their use in the particular circumstances will rationally and logically have natural tendency to focus illumination upon true intent. With these principles in mind, we do believe that, in circumstances such as are present in the instant case *where the donee or possessor of the general testamentary power knows that he has such power*, the Massachusetts rule is the better serviceable device to reach and effectuate the factual testamentary intent, and to that extent we do adopt the Massachusetts doctrine.

Thus, by virtue of the presumption, the ambiguity present in the residuary clause leaving the "rest, residue, and remainder of *my estate*" must be resolved in favor of the exercise of the power of appointment and be so construed as to pass both the testamentary estate so-called and the appointive trust estate, unless the circumstances surrounding the execution of her last will indicate on the part of the testatrix an intent not to exercise the power.

■ Can that contrary intent be inferred from the fact that the testatrix omitted from the residuary clause of her last will the language which she had used in her first will to exercise the power, to wit, property "over which I may have testamentary control?" Initially, let us say that the testatrix' first will was properly admitted in evidence. It was part of the surrounding background against which Mrs. Goulding made her final dispositions. A prior revoked will may be consulted as a constructional aid in the search for the testator's intention imperfectly expressed in the terms of a last will. In re Jackson's Estate, 1940, 337 Pa. 561, 12 A.2d 338; Central Trust Co. of Cincinnati v. Lamb, 1944, 74 Ohio App. 299, 58 N.E.2d 785; In re Frederick's Estate, 1964, 41 Misc.2d 759, 246 N.Y.S.2d 320, affirmed Sup., 253 N.Y.

S.2d 525; Carlisle v. Delaware Trust Co., 1953, 34 Del.Ch. 133, 99 A.2d 764; Loring v. Clapp, 1958, 337 Mass. 53, 147 N.E.2d 836; Page on Wills, 3 Ed., Vol. 4, § 1625, p. 668.

It is the duty of the court as a matter of elemental and basic justice to determine the probable intent of Mrs. Goulding and to carry out her intentions, though they be imperfectly expressed, provided they can be reasonably and lawfully discovered and are adequately proven.

■ "Courts can only deal in probabilities where intention is in question, but if there is doubt or ambiguity, evidence outside the will may assist in finding the probabilities." New England Trust Co. v. Sanger, 1955, 151 Me. 295, 307, 118 A.2d 760, 766; Fiduciary Trust Co., Tr. v. Silsbee, et al., 1963, 159 Me. 6, 14, 187 A.2d 396.

Multiple circumstances surrounding the testatrix persuasively indicate that Mrs. Goulding's omission of the words "over which I may have testamentary control" from the residuary clause of her last will was not intentional, but an obvious oversight devoid of any legal significance. A comparison of both wills indubitably establishes the fact that the first will was the pattern for the last will and that it was most probably in the possession of the attorney when the last will was executed. But it is admitted that the attorney who drafted the last will never knew Mrs. Goulding, never saw her and never spoke to her in connection with its execution. The bank president, now deceased, hired the attorney for the Bank and gave him directions as to how this will had to be drafted. The bank president, not the attorney, acted as Mrs. Goulding's adviser, in the execution of this will. Thus, because of her complete trust in the Bank's president, Mrs. Goulding with counsel acquiescence was deprived of those explanations which the scrivener-lawyer has the duty, right and expertise necessary to give to a prospective testator. New England Trust

Co., et al. v. Sanger, et al., 1955, 151 Me. 295, 310, 118 A.2d 760. We cannot say, in the face of all the circumstances, that the scrivener's omission was that of the testatrix. The scrivener did admit that he did not remember Mrs. Goulding's execution of the living trust which he at that time prepared at the request and upon the directives of the Bank's president and not the settlor's. We look upon such practice with disfavor as tending to encourage unauthorized persons to engage in the practice of law.

That Mrs. Goulding was mentally alert throughout the period of her life involved in these proceedings to the time of her death is unquestioned. That she had turned over to the Bank practically all her large estate so that her future maintenance and support, as she knew, had to be provided from the living trust either out of the income thereof or as provided therein out of principal as the Trustee in its discretion might have deemed necessary is undisputed. The living trust provision for her next of kin, possibly due to the Bank's insistence thereon, does not necessarily establish a present donative intent in the settlor to benefit them, as the evidence clearly reveals that no close association existed between Mrs. Goulding and these distant relatives. This clause of the Trust indenture must rather have been intended to facilitate distribution by the bank of the trust property after the termination of the living trust, should in the future Mrs. Goulding elect to die intestate or otherwise fail or decline to exercise her reserved testamentary power of appointment. Her close relationship to the president and other bank officials and her constant concern with the investments of the trust property, supplemented by her numerous additional assignments of personal assets to the living trust during the remainder of her life, speak very forcefully for the natural inference to be gathered from the whole evidence that she was fully cognizant of the terms of the trust whereby she retained complete control by testamentary power of appointment, and that so far as she was concerned the appointive trust property was her property and that when she referred to "my estate" in her last will she intended to refer to the bulk of her property already in trust as well as to the meager portion of the property which she still owned outright.

Furthermore, Mrs. Goulding's last will carries within itself potent proof of her intended exercise of the power of appointment which she had reserved to herself in the living trust. Her last will departed from the first in that 1) it added as part of "my estate" in the residuary clause "the money received by my estate for shares, or the shares themselves, in a loan and building association" and 2) in re-affirming the memorial trust fund in the memory of her parents for the benefit of Preachers Aid Society she meticulously set out as powers of the plaintiff trustee under the testamentary trust the same elaborated powers as had been declared in the living trust agreement respecting retention of securities received, sale of personal property, right to invest in common or preferred stock without regard to statutory provisions respecting investment of trust funds, right to vote stock, etc.

Mrs. Goulding's interests in the Bar Harbor Loan and Building Association had already been transferred by her to the Bank under the living trust and for her to include these same rights by specific reference thereto in the residuary clause of her last will respecting her testamentary trust suggests that she then intended to exercise her power of appointment when she used the terms "my estate". Furthermore, the fact that Mrs. Goulding appointed as her testamentary trustee the plaintiff Bank which was already handling her living trust and that she clothed it with the same detailed powers as specifically spelled out by the living trust is very persuasive that she intended by her testamentary residuary clause to bring the living trust under the will. Such meticulous care on the part of the testatrix equally manifested toward the testamentary trust as the living trust, is utterly inconsistent with the claim of counsel

for the next of kin that the power of appointment was not exercised.

Any one of the following reasons could have motivated Mrs. Goulding in 1961 to make her last will and revoke her first one. She may have had in mind that she should remember other cousins than Helen Elizabeth Fernald, the sole next of kin beneficiary in the first will; in her last will she did in fact divide her jewelry, silverware, heirlooms and other articles of personal property amongst most of her cousins. Another reason could have been her desire to bequeath, as she did, the sum of $1000 to the Congregational Church of South West Harbor. It is most likely however that her main reason for making her last will was to assure the permanent existence of the memorial fund which she intended in memory of her deceased mother and minister father, a cherished testamentary purpose harbored from the time of the execution of her first will, by appointing the Bank, her chosen inter vivos trustee, in whose president she had complete faith, to act as testamentary trustee and thus continue the management of the trust memorial in the same satisfactory way as had been done in the case of the living trust during her lifetime and guarantee to the aged and retired preachers of the Maine Conference of the Methodist Church, their widows and orphans, a highly qualified and expert administration of the trust.

That her probate estate at her death, stripped of the living trust property values, amounted to less than $17,000, as compared to the total assets of over $200,000 which she undoubtedly viewed as her memorial legacy in honor of her parents, was a further indication that she intended to exercise her power of appointment by the terms of the residuary clause of her last will. Without the trust property as a part of the memorial to her deceased parents, Mrs. Goulding's testamentary attempt to set up a monument to the memory of her father's life of sacrifice in the ministry of God would have been a practical failure.

We conclude that the language of the residuary clause of Mrs. Goulding's last will as viewed in the light of all the circumstances surrounding the testatrix at the time of the execution thereof was an exercise by her of the power of appointment reserved to her in the trust indenture and that the plaintiff has so proven the same to all probabilities. The contrary finding by. the Justice below was clearly erroneous.

The entry will be,

Appeal sustained. Decree to be made by the sitting Justice below in accordance with this opinion. The costs and expenses of each of the parties including reasonable counsel fees, to be fixed by the sitting Justice after hearing, and to be paid by the testamentary trustee, except that no costs, expenses or counsel fees, incurred by the Bar Harbor Banking and Trust Company in connection with the instant case shall be allowed.

So ordered.