Lafferty's Estate (No. 1).

Argued January 3, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Daniel C. Donoghue,* with him *Francis A. McCarron,* for appellant.—The testator did not intend the corpus of the trust to vest in his grandchildren: Maxwell's Est., 261 Pa. 140; Nixon's Est., 306 Pa. 261; Huddy's Est., 257 Pa. 528; Kemble's Est., 279 Pa. 368.

The will of Francis Lafferty was not a valid exercise of the power of appointment given to him: Aubert's App., 109 Pa. 447; Baker's Est., 17 Pa. Dist. R. 515.

*William N. Trinkle,* with him *Frank F. Truscott* and *John C. Bell,* for appellee, cited: Woelpper's App., 126 Pa. 562; Groninger's Est., 268 Pa. 184; Walker's Est., 277 Pa. 444; Freeman's Est., 280 Pa. 273; Wengerd's Est., 143 Pa. 615; Hall's Est., 248 Pa. 218; McCall's App., 86 Pa. 254.

*Robert W. Skinner, Jr.,* for appellee.

*Henry I. Koplin, Thaddeus M. Daly, Jr.,* and *Louis J. Daly,* for Marie Galen, appellee.

*Edward C. Dougherty,* for William J. Huston and executors of Charles J. Lafferty, deceased, appellees.

OPINION BY MR. JUSTICE KEPHART, March 27, 1933:

Charles Lafferty made his will in 1875 and died in 1885. The distribution of the corpus of his estate, $1,-800,000, causes this controversy. The first four items of the will do not aid in its solution. The remaining items, relating to the questions involved in the dispute, must be passed on.

Decedent had six children, and his son, Francis, whose share is for immediate consideration, left three children. While we are concerned with the share of Rose Lafferty, child of Francis, afterwards Rose Carr, our decision will apply to all interests. Rose was survived by two children, Edward, and Sarah who married Riley and has since died, leaving a child, Rosemary. Edward, Rose's son, is now a weak-minded person, and Rosemary Riley is under age, having a guardian duly appointed.

Francis Lafferty by his will gave his share in his father's estate to his three children, Francis J., Charles B., and Rose. His daughter Rose by her will bequeathed one-third of the personal estate absolutely and one-third of the income from the real estate for life, to her husband; and divided the residue of her share between her two children. The husband of Rose, after her death, married, and at his death gave by his will to his second wife, the part which his first wife, Rose, had given to him. This, perhaps, brought on the contest now before the court.

Charles Lafferty, by his will of 1875, created a residuary estate that was to endure for the life of his surviving children and until the youngest grandchild living at the death of his surviving child, reached twenty-one. During this period the income was to be paid to his children

with remainders over. The disposition of this income after the death of certain children has often brought this will before the courts for consideration. In 1901 after Francis Lafferty's death, Judge ASHMAN passed on the disputed items of the will in the adjudication of the 14th account. Under Judge ASHMAN's decree the income arising through Francis Lafferty's share was given to the executor and trustee, thus recognizing the validity of the second wife's claim. When the 15th account came on for adjudication, Judge ASHMAN changed his mind and awarded the income to the guardian of the children, and by so doing decided that this wife had no share in the estate. On exceptions, the court in banc, in an opinion by Judge PENROSE, reversed this order, recognizing the claim of the second Mrs. Carr. This action was affirmed by this court on appeal. See Lafferty's Est., 209 Pa. 44.

Seven years later, in 1911, Judge LAMORELLE of the Orphans' Court of Phila. County, in passing on a later account, awarded the income to the guardian of the minor children, again cutting out the second wife's claim. On exception to this decree, Judge ANDERSON for the court in banc sustained Judge LAMORELLE's conclusion. Judge PENROSE was then a member of that court. On appeal to this court, the decree of the Orphans' Court was reversed. See Lafferty's Est., 230 Pa. 496, wherein the income was awarded to the executors or trustees, thus reinstating the second wife's interest.

Three years later, in 1914, an almost identical contest over income arose through the share of Patrick Lafferty, another son of testator. Judge GEST, under another item of the will, awarded the income arising from this share to the wife and children of Patrick. This decree was affirmed by the Superior Court. See Lafferty's Est., 59 Pa. Superior Ct. 24. Nine years later, in 1924, after the death in 1923 of Charles B. Lafferty, a child of Francis and a brother of Rose Carr, the same question as to income was relitigated with no change in the decree that

would affect the status of the second wife. This conclusion was affirmed by the court in banc.

The last surviving child of testator having died, and the youngest grandchild having reached majority, the distribution of the corpus came before the court below. As above stated, it was decreed that Rose Carr's interest in Francis's share, passed under her will to her husband and her children. This of course sustained the claim of her husband's second wife. The children's representatives appeal.

Appellants contend, as they did in the court below, that as to corpus, the provisions of the will evidence an intention to appropriate the estate exclusively to the issue of testator, meaning the issue of a child living when the trust estate terminates by its own limitation or duration as fixed in the will. To summarize their positions: the issue can be determined only when the general trust terminates. The effect of such a conclusion is that the limitation over may carry a child's share to more remote issue than grandchildren of testator. Appellants also contend that as the former litigation concerned income, appellants are not bound by it, nor does it control because appellants have never had their day in court. If they have had, say appellants, the decisions are wrong.

The 5th item of the will creates and defines the general trust. It gives to the executors the residue of the estate to hold until the last surviving *child* dies, and thereafter until the youngest grandchild living at the decease of the surviving child shall or should arrive at lawful age if living. The executors are directed to collect the income and pay it in annuities, one-sixth of the net income to each child. These annuities could not be assigned or anticipated, nor were they liable for debts, contracts, or engagements, nor to attachment and execution. There is nothing in this item that limits or controls the remainders that may be created thereafter, nor is there any reference or intimation therein that remainder interests are in the issue living when the trust

terminates. Nothing therein suggests testator intended to exclude the immediate offspring of his own children, living at the deaths of such children, simply because such grandchildren, or other offspring then living, might die during the continuance of the trust; or, as Chief Justice PAXSON says in Wengerd's Est., 143 Pa. 615, 621, to exclude "by the mere accident of his death the day before the money was distributed." Item 5 having designated the sums to be paid annually to his children during their lives, the next item, the 6th, contains specific directions as to the disposition of such shares after their death.

Item 6 provides that should any of testator's children die (1) without issue then living, or (2) leaving issue then living who die during minority leaving no issue then living, the share of such child goes over to the original residuary trust estate to increase the annuities of other surviving children and the issue of those children that may be deceased. *This is the only limitation over in testator's will* and is the limitation referred to in and which permeates other items of the will. We must ascertain what testator meant by it. It is this limitation as referred to in other items that gave rise to the difference of opinion among the Judges and here presents the question: are the gifts contingent until the termination of the trust because the identity of issue cannot until then be ascertained? Vesting would thus be suspended; ownership left hanging in air. Meanwhile the interim interests in income would become as intricate as a Chinese puzzle.

Testator intended to vest an equal share in each child's line of descent and keep it within that line at least to include his child, and the children or issue of a child living at the child's death. He also intended if a child died without issue that this child's share should go to testator's other children then living or to their issue, if any. In item 6, he stipulated how this was to be done and that such child's share should merge into the gen-

eral residuary trust estate and become extinct so far as that child's interest in or dominion over it was concerned. The limitation over speaks and is effective, if at all, from a child's death. One of the following events must occur to make effective the limitation over: (1) death of a child without issue then living, or, (2) death of a child leaving issue then living who die during minority without issue then living. The possibility unmentioned by item 6, and which must always be kept in mind, is that when one of testator's children dies, his or her children or issue may, by that time, have reached twenty-one. There can be no limitation over *if a child die leaving issue then living who is twenty-one or over.* In the event testator's child dies and leaves such issue, item 7 or 8 is immediately operative. That is, either testator's child will have appointed in exercise of his power under item 7, or he will not have, and his share is disposed of under item 8.

The phrase "should a child die and leave no issue living at his death" means but one thing—death of a child of testator without child, children or issue of such child him surviving. So conversely, if a child should die "leaving issue living at his death" means that the issue of testator's child must be alive when the child dies. The child's death not only fixes the time when its issue must be ascertained, but it fixes the time (1) when vesting takes place, and (2) for determining whether the limitation over is to take effect. Under the will no other time for either of these purposes is mentioned or reasonably possible. It is at that time the issue must be living, not at some later period. If such issue be alive at the child's death, "and such issue shall all die during minority leaving no issue then living," means that when such issue dies before majority and leaves no issue then living (that is, the line of descent ends), the limitation over takes effect.

This latter provision contemplates that even if the condition precedent, i. e., issue living at the death of tes-

tator's child, has been fulfilled, the purpose of the condition, i. e., to keep the estate in the blood line until issue of his own children were in being and legally capable of controlling it, might be frustrated by the death of such issue while yet infants. Hence, testator included this condition subsequent to throw back into the general estate the share vested in such issue upon the death of testator's child. But the fact that must exist to prevent the limitation over from taking effect is death of a child with issue then living. If this crucial fact exists, the estate vested in the issue subject only to the possibility of being divested if such issue die during minority without surviving issue.

In neither item 6 nor 9, later referred to, is there the slightest suggestion that the testator intended at a child's death to suspend operation of the limitation over, or the vesting of a child's share or part of it in the child's issue then living, until the termination of the trust.

An estate will not be construed to be contingent, if it is at all practicable to construe it as vested: McCall's App., 86 Pa. 254, 257; Carstensen's Est., 196 Pa. 325, 330. The condition attached to the gift in the latter part of item 6 is a condition subsequent, not precedent. Thus, if a devise be to A, if or when A shall attain a given age, with a limitation over upon his death under that age without issue, A takes a vested estate, defeasible only in the event of his death under the specified age without issue: Hawkins on Wills, page 240. If the issue died during their minority leaving no issue then living, the estate vested in them will then be divested on the happening of the event specified and go over as an accrued share.

Testator was aware, though he definitely wished to benefit the issue of his children living at their deaths, that his children would be in a better position to determine the need, capacity to manage, and worthiness of their issue, than was he at the time of his death. As a result, in item 7 of his will he gave to each of his children

leaving issue at his or her death a limited testamentary power to appoint either *"absolutely or in trust,"* his or her respective share to and among his or her issue, in such shares, proportions and estates as the child should determine. These appointed shares are taken by such issue subject: (1) to the trusts of this will during the life of the trust, i. e., the original residuary trust; (2) to the limitations over to the surviving children or the issue of deceased children. These qualifications of the power merely embody the limitation over prescribed in item 6. The death of the child who exercises such power, fixes the time when the issue shall be ascertained and take (Pepper's App., 120 Pa. 233), under the power thus conferred. The child, children or issue receive from the parent an "absolute" estate or one in a trust the parent may create. Such estate is, however, subject to the limitation over as mentioned in item 6. If the issue are over twenty-one at the child's death, the appointment, as made by the child, is, for all time absolute, though its enjoyment in possession may be postponed until the end of the trust created by testator. The same result occurs if the issue are under age at the child's death and thereafter reach twenty-one, or die leaving issue then living. Appellant contends, inter alia, that when the power is exercised, the limitation over to the issue is the same as that contended for in the 6th item, i. e., to issue living at the termination of the trust. Judge PENROSE in reversing Judge ASHMAN in the adjudication of the 15th account in this estate, construed item 7 even more liberally to the child, children or issue, than do we. He states: "The error has probably arisen from reading the will of the original testator as if the limitations attached to the powers of appointment given by him to his children extended to the estates given by them to their children, although the power is to appoint 'to and among his or her children or issue in such shares, proportions, and estates, absolutely or upon trusts, as he or she may so will or appoint.' The donees of the power could not ex-

ercise it in favor of persons not belonging to the designated class of objects, but their appointees acquired all rights of ownership, unlimited in power of disposition." He held the limitation over did not adhere to the power. There may be much force in this conclusion as appears from the concluding part of the 7th item, which reads: "that is, during such trust the annuities shall be subject to the disposal of my children as aforesaid, and the shares of the residuary estate to take effect in possession at the expiration of the trust," but the entire will must be considered. When it is, it is apparent that testator did not thus free the appointed interests.

Appellants argue that a child could not exercise the power of appointment unless in his will he referred to the power itself (which Francis Lafferty did not, in terms, do), and that the Act of June 4, 1879, P. L. 88, did not enlarge the donee's right in this respect. Prior to that act a general power of appointment could only be exercised by reference to the power to be executed or an actual disposition of the subject of the power: Bingham's App., 64 Pa. 345. Since that act it was held in Garman v. Glass, 197 Pa. 101, that the act referred only to unrestricted powers of appointment. Apart from what this court may have decided in Lafferty's Est., 209 Pa. 44, and Lafferty's Est., 230 Pa. 496, as to this particular restricted power, we have held that a limited power may be exercised without direct reference to the creating power, by a clause which names all the members of the permitted class as beneficiaries. This was done in Francis Lafferty's will as to the share now in dispute. See Lloyd v. Fretz, 235 Pa. 538, and Darling v. Edson, 4 Pa. Superior Ct. 498. Lafferty's Est., 209 Pa. 44, is an authority for the same proposition.

The 8th item provides that if a child dies leaving issue then living and does not exercise the power of appointment, the executors shall hold the share the child *might have appointed* in trust for the child, children or issue of such decedent living at his or her death in equal shares

so that such issue shall take equally, only the proportion that their deceased parent would have taken *if then living,* but subject (1) to the trusts hereinbefore created until their limitation shall expire; (2) to restrictions and conditions as to debts, and (3) "to the limitation over in case of all the issue of any of my children dying in their minority without issue." The conditions in this item as mentioned above refer, first, to the trust generally (it is admitted no disposition avoids the termination of the general trust mentioned in item 5) ; second, to the spendthrift trust and other similar restrictions that do not affect the quality of the estate taken by the issue. A spendthrift trust may protect the income and incidentally protect the corpus during the period of the trust, but it will not, unless clearly intended, affect the quality of the estate that is to pass under a will: Hall's Est., 248 Pa. 218, 222. Nixon's Est., 306 Pa. 261, is not in opposition to this view. As it relates to this estate, Judge RICE in Lafferty's Est., 59 Pa. Superior Ct. 24, 36, decides this question.

It is contended by appellant, as it was as to items 6 and 7, that the limitation over in item 8 had the effect of imposing a qualification on the estates to be taken thereunder, to the extent that the limitation was not to the issue living at the death of the child of testator but to the issue of testator's children living at the end of the trust. But this limitation over mentioned in item 8 is the same limitation stated in item 6, *the only limitation over mentioned in the will.* As we have considered this item, we may say further that to follow appellant's argument we must adopt a conclusion that is entirely out of harmony with the testator's intention, and would be construing the limitation over as affecting interests not contemplated by the will, thus causing the interim interests to so fluctuate as to be exceedingly difficult of ascertainment.

There is no doubt but that Charles Lafferty intended to keep his estate within his own blood, at least to the

issue of a child, as he directed the appointees of his children to be of his blood. This intent applies likewise to those who took under item 8. But he never intended the interdiction to be carried to a remote degree, to the possible detriment or exclusion of grandchildren or other issue. It will be noticed that the share that is taken under the 8th item is the same share which could be appointed under the 7th item. Under item 8 a certain share of the principal or corpus is distinctly directed to be held in trust "for the child, children or issue of such decedent or decedents living at his, her or their deaths." This shows clearly the distributive proportions in which those persons were to take, that is, equally the proportion that their deceased parent would have taken if then living; the last words fixed the death of a child of the testator as the time of vesting in the issue of such child, and show the stirpital character of such interests.

Judge GEST, whose opinion was sustained in Lafferty's Est., 59 Pa. Superior Ct. 24, at page 31, summarizes this item thus:

"There is nothing whatever in this clause of the will to show, as in Rowland's Est., 141 Pa. 553; 151 Pa. 25, and Babcock's Est., 18 Pa. Dist. Rep. 453, that the testator intended the income to be distributed among a fluctuating class of issue or descendants who might be living at successive periods of distribution; indeed, there is no direction at all for the payment of the income except such as would necessarily follow from the ownership of the corpus, nor is there anything restricting the interests of the children or issue of a deceased child of the testator to life estates, the case being similiar in this respect to Little's App., 21 Pa. Dist. Rep. 1103."

Judge RICE, in the same case on appeal, page 37, speaks of it as follows:

" 'The object of the eighth clause was to provide, in case such appointment was not made by will (which might or might not be preferential as the testator might determine), that the share of the child so dying should

at once vest in his children or issue equally and per stirpes, as they were ascertained at his death, and not to provide for an entirely different and fluctuating distribution of income until the termination of the trust and for distribution of the principal at that time among a class which until the arrival of that time would be entirely contingent.' "

Appellant urges the Superior Court was disposing of income and not corpus and hence its decision would not be controlling; but as the will is construed by this court the result is the same when applied to corpus.

Rose Carr, the daughter of the child Francis, who was living at his death, having fulfilled the requirements of item 6, took a vested estate absolute in the corpus and the income, the enjoyment of the corpus being postponed until the termination of the trust. This share she could devise and bequeath subject to that limitation (end of the trust) to her husband, not of the ancestor's blood, and to her children. The right to dispose of it in the manner in which she did, by her will, was absolute.

The 9th item was inserted as a further protection in addition to items 6, 7 and 8; it, in part, reads: "Should it possibly happen that the share, or shares, of any of my children shall not vest absolutely, until after the limitation of said trust shall expire, by reason of any unexpired minority of issue to whom limitations have been made but contingent until their majority, and the contingency should happen after the expiration of such trust." It then provides for the contingency of an estate in the issue of one of testator's children being divested after the trust shall expire by reason of death during minority without issue. The word "contingent" does not impale or control vesting in issue, as above indicated, and as so clearly evidenced by other items of the will. This item does make certain that if at the termination of the general residuary trust an unexpired minority existed, thus making possible the operation of the condition subsequent in item 6, and thereafter the con-

tingency should occur, the share, which had vested in the minors and was divested by reason of their death under age without surviving issue, should go over to the issue of other children of testator as such other children had appointed by their wills under item 7, or as provided under item 8 in event of their failure to appoint. The contingency in paragraph 9 never in fact occurred, all estates including that of the last grandchild having vested absolutely before the termination of the trust.

It is urged that item 13 shows vesting was intended to occur at the termination of the trust. It provides for distribution when the residuary trust terminates "and the issue of my children shall become entitled to their shares absolutely," and is a direction to the executors to account and pay. The clause is not dispositive and is merely a reiteration of the direction given in items 7 and 8. It does not disturb our conclusion as to items 6, 7 and 8.

Having determined that the share of Rose Carr, daughter of Francis Lafferty, son of Charles Lafferty, the original testator, was vested, it is perhaps unnecessary to decide the question raised as to "The law of the case." When the decree of the Orphans' Court was reviewed by this court in Lafferty's Est., 209 Pa. 44, the questions under consideration were whether the power had been validly exercised. We have previously noticed what Judge PENROSE decided in that case, and we affirmed his decision Per Curiam. When another decree of the same court came before us for review, we held in Lafferty's Est., 230 Pa. 496, that the question involved in the first decision necessarily concluded a determination of the question whether or not the will of Francis Lafferty was a valid exercise of the power of appointment. It will be noted that the will of Francis did not go outside of the class mentioned in item 7, and created an equal division among all his children, though under the power he could have cut down the share of one or two of them.

We have indicated in discussing the power of appointment under item 7, that, where a restricted power is exercised within the class authorized, a specific reference to the instrument creating the power is not necessary, and the authorities since seem to sustain this conclusion. We need not discuss the question further. As we view the will, if the appointment under item 7 was bad, item 8 would control, for Francis Lafferty's will divided into equal shares his share of his father's estate and that was identically what item 8 did.

Whether the appellants had their day in court need not be decided as they undoubtedly have it in the present appeal.

The assignments of error are overruled and the decree of the court below is affirmed, costs to be paid from the estate.