Jeffers Estate.

Argued September 29, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Robert O. Butler*, for appellants.

*Ralph S. Snyder*, Deputy Attorney General, with him *Joseph L. Cohen* and *Lois G. Forer*, Deputy Attorneys General, and *Thomas D. McBride*, Attorney General, for Commonwealth.

*William S. Middleton*, for Presbyterian Home of Central Pennsylvania, appellee.

OPINION BY MR. JUSTICE COHEN, January 5, 1959:

On April 26, 1910, E. T. Jeffers, deposited $5,000 with the York Trust Company as trustee pursuant to an inter vivos trust agreement, for the following uses and purposes: "To hold and invest said sum of money and to collect the interest and income from such investments and to pay the same, less proper costs and charges, to Evetta Tupper Jeffers, daughter of the said E. T. Jeffers, semi-annually, during her life, *and upon her death to pay, deliver and transfer said principal sum of Five Thousand Dollars, less proper costs and charges, to such persons as she, the said Evetta T. Jeffers, may by her last will and testament appoint, and in default of such appointment, to her next kin in the proportions established by the intestate laws of the State of Pennsylvania.*" (Emphasis supplied).

On May 23, 1949 the aforementioned daughter of E. T. Jeffers, Evetta, executed the following document and caused the same to be acknowledged before a notary public:

"York Trust Company,
York, Pennsylvania

Gentlemen:

"I, Evetta J. Schock (Mrs. Clarence Schock), was born Evetta Tupper Jeffers, and I am the life beneficiary of the trust created by agreement, dated April 26,

1910, between E. T. Jeffers and York Trust Company for the benefit of Evetta Tupper Jeffers, in which the principal fund was originally Five Thousand Dollars ($5,000.00).

"By the terms of the Trust Agreement, upon my death the principal sum is to be paid, delivered and transferred to such persons as I may by my last will and testament appoint, or, in default of such appointment, to my next of kin in the proportions established by the intestate laws of the Commonwealth of Pennsylvania.

"*Please be advised that I do hereby renounce, relinquish, release and surrender the power of appointment vested in me by said Trust Agreement, except to appoint to descendants of said E. T. Jeffers, the creator of the power, spouses of such descendants, donees described in section 812(d)* of the United States Internal Revenue Code; and *donees described in section 861(a)-(3) thereof.* (Emphasis supplied).

"Witness my hand and seal this 23rd day of May, 1946.

"(signed) Evetta J. Schock."

On June 2, 1949 Evetta delivered the document of May 23, 1949 to the York Trust Company together with the following letter :[1]

"I send you herewith a renunciation executed by me on May 25, 1949, in which I renounce my unlimited right to appoint heirs to the principal of the trust fund which you hold by deed of trust made by my father, Dr. E. T. Jeffers, the income of which goes to my benefit. The original deed of trust made by my father gave me the right to name the heirs to the principal of this trust fund if I so choose to do. The enclosed renunciation renounces my right to name other than the law-

---

[1] The record does not explain the discrepancy in dates.

ful heirs of my father, Dr. E. T. Jeffers, as the heirs to the principal of this trust fund.

"Please see that this renunciation is properly filed in your records. A copy of it has already been sent to the Commissioner of Internal Revenue because it is very important that this renunciation be executed prior to July 1, 1949.

"Please oblige by acknowledging receipt of this letter and the renunciation."

Evetta died March 23, 1956, leaving a will dated July 11, 1955, of which item IX, the general residuary clause, provided as follows:

"Item IX. All the rest, residue and remainder of my estate I give and bequeath to Albert D. Seiler and Paul L. Stoner, or their successors as trustees, in trust nevertheless, for the following purposes: . . . (B) The net income of the trust shall be paid not less often than annually to the Presbyterian Home of Central Pennsylvania, Newville, Cumberland County, Pennsylvania, to the extent needed for the maintenance of the home for elderly women provided for in Item VII of my last Will and Testament."

Evetta, by the trust agreement of April 26, 1910, was given a general testamentary power of appointment. Such a power is releasable, Act of April 24, 1947, P. L. 100, §3, 20 P.S. §301.3(a), and may be released in such manner as to reduce or limit the persons or objects or classes of persons or objects in whose favor such power or interest would otherwise be exercisable.[2] Act of April 24, 1947, P. L. 100, §3, 20 P.S.

---

[2] Even prior to the enactment of the Estates Act of 1947, we had held that a general testamentary power was releasable. *Lyon v. Alexander*, 304 Pa. 288, 156 Atl. 84 (1931). Indeed, specific statutory authority for the release of any power of appointment exercisable by deed, by will, by deed or will, or otherwise, whether general or special, was provided for by the Act of May 28, 1943, P. L. 797, 68 P.S. §§581-584.

§301.3(b). It is also clear that by the execution and delivery of the documents of May 23, 1949 and June 2, 1949, Evetta affected a partial release of her general power of appointment.[3]

The question presented for determination is whether the next of kin of Evetta, as takers in default of appointment, under the trust agreement of April 26, 1910, are entitled to receive the balance of the trust funds pursuant to the trust agreement, or, whether those funds shall be awarded to the Presbyterian Home of Central Pennsylvania under the residuary clause of Evetta's will.

The lower court's adjudication awarded the balance of the fund to the Presbyterian Home of Central Pennsylvania. The Presbyterian Home of Central Pennsylvania is entitled to the monies if, and only if, the residuary clause of Evetta's will is an exercise by her of the power of appointment given to her by her father.

The Act of April 24, 1947, P. L. 89, §14, 20 P.S. §180.14(14) provides: ". . . a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, *which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power.*" (Emphasis supplied).

Did Evetta, at her death, have the power to appoint the trust funds in question in any manner she thought proper? If she did then, barring a contrary intent ap-

---

[3] The law applicable to release of powers of appointment is completely influenced by federal tax considerations arising from the revisions of the Internal Revenue Code since 1942. Our Pennsylvania acts relative to release of power of appointment sought to take advantage of the permitted federal tax benefits. See 5 Am. Law of Prop. §23.25 (1952).

pearing in her will, the residuary clause of her will will be considered to be an execution of such a power. This brings us to a consideration of the effect of the release executed by Evetta. The court below in the instant case, and Judge BOLGER of the Orphans' Court of Philadelphia in his adjudication in *Handy Trust*, 6 Fiduc. Rep. 385 (1956), have held that, even in face of such a release, the donee of the power (Evetta in the instant case) had at her death the power to appoint in any manner she thought proper. The lower court reasoned that the limitation which resulted from the release could in no way affect or change the inherent quality of the power to make the general power of appointment a special or limited power of appointment requiring its exercise in a special or limited manner. We disagree with this conclusion.

The legislature has specifically given the donee of a power of appointment the privilege of releasing that power in such a manner as to reduce or limit the persons or objects or classes of persons or objects in whose favor such power should otherwise be exercisable. Evetta exercised that privilege in a manner consistent with statutory authority. By doing so she effectively reduced and limited the persons or objects or classes of persons or objects in whose favor the power of appointment given to her would otherwise be exercisable. To say that after such an effective reduction or limitation she, nevertheless, retained the power to appoint in any manner she thought proper is to nullify and negate the legislative enactment. By the execution and delivery of the release she changed the general power to a limited or special power, and the Act of 1947 which permits the execution of a general power by a general residuary clause does not apply to a special or limited power. Powers that are special or limited cannot be exercised through a residuary clause in

a decedent's will unless all of the members of the class established by the donor are included. *Lafferty's Estate (No. 1),* 311 Pa. 455, 167 Atl. 44 (1933); *Biddle's Estate,* 333 Pa. 316, 5 A. 2d 158 (1939).

The above discussion, however, does not conclusively resolve the issue for ultimately the determination of whether a power of appointment has or has not been exercised depends on the intent of the donee. *Windolph Trust,* 374 Pa. 81, 87, 97 A. 2d 67 (1953); 5 Am. L. Prop., pp. 554, 555 (1952); Restatement, Property, Ch. 25, Topic 6, Introductory Note (1940).

Aside from statutory compulsions, the law in this State has always been that when the donee of a power of appointment makes a gift of the residue of his estate or otherwise manifests an intent to dispose of all of his property, this of itself does not indicate an intent to exercise a power of appointment. *Thompson v. Garwood,* 3 Wh. (Pa.) 287 (1838); *Neill's Estate,* 222 Pa. 142, 70 Atl. 942 (1908). The instant case presents no factors other than the residuary clause indicating an intent on the part of the donee to exercise her power of appointment. Absent such factors the general rule that a residuary gift will not of itself be construed to exercise a power of appointment, whether general or special, must be applied.

We, therefore, conclude that the Act of April 24, 1947, P. L. 89, §14, 20 P.S. §180.14(14) applies only when the donee has the power to appoint in any manner he shall think proper, which here is inapplicable, in view of the effective release restriction accomplished by the donee and that the donee has not expressed an intent in her will indicating a desire to exercise the limited power of appointment now possessed by her.

The decree of the court below is reversed and the case remanded for further adjudication in accordance with this opinion at the Estate's cost.