## Schede Trust

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Stradley, Ronan, Stevens & Young*, for exceptant.

*Morris Michael Marks*, guardian ad litem, p. p.

ADJUDICATION

SAYLOR, J., December 22, 1965.—Albert W. Schede died June 1, 1957. By his will and a codicil thereto, duly probated, he gave his estate to his trustees named therein, in trust to hold the same in two separate trusts, one a marital deduction trust and the other a residuary trust, upon provisions which are set forth in the statement of proposed distribution and in prior adjudications and as more fully discussed in this adjudication.

The fund accounted for was awarded to the trustees by an adjudication filed by me on December 2, 1958, sur the first account of the trustees. This account has been filed because of the death of Lucile A. Brooks, life tenant and cotrustee, on May 4, 1965. The trust continues.

By decree entered October 4, 1965, Morris Michael Marks, Esq., was appointed guardian ad litem for Lucile Sloan and Robert Blaney Sloan, minors. He appeared at the audit and filed a report, in which he takes the same position as that of the accountant on the question presented for adjudication. His arguments are incorporated in the discussion that follows, and his report is approved and is attached hereto and made part of the record.

The marital deduction trust created by item third of the will gave to testator's widow certain rights to withdraw principal. Those rights were exercised, with the result that all of the principal thereof was paid out to the widow during her lifetime. We are, therefore, now concerned only with item fourth of the will, the residuary trust.

Item fourth, as amended by item second of the codicil, provides for the payment of the net income of the residuary trust to testator's wife, Lucile A. Schede (later Brooks) for her life, with the right on the part

of the trustees to distribute to her principal up to $5,-
000 per annum, and upon her death to pay the re-
mainder to such persons "as my wife may by her last
will and testament or any writing in the nature thereof
designate and appoint by specifically referring to this
will, and upon her failure to do so, the trust shall con-
tinue and shall be divided into two separate trusts
hereinafter referred to as Trust A and Trust B".

There are further provisions relevant to trusts
A and B not necessary to recite here.

After testator's death, his widow married one Ber-
nard F. Brooks. She died on May 4, 1965, survived by
her husband and leaving a will. Item fourth of her
will provides as follows:

"Fourth. I give, devise and bequeath all of the rest,
residue and remainder of my property, both real and
personal of every kind and nature and of which I may
have a power of appointment to my husband, Bernard
F. Brooks absolutely and forever".

The question presented for adjudication is whether
or not Lucile A. Brooks effectively exercised her power
of appointment under item fourth of the will of Al-
bert W. Schede. To state it more broadly, is a gift in
a residuary clause of a will of "all property, of every
kind and nature and of which I may have a power of
appointment . . ." sufficient to exercise a power of
appointment which includes a specific reference clause?

Because this issue seems to be one of first impres-
sion in this Commonwealth, and because it is likely
to arise again, it is worthy of full discussion.

The Wills Act of April 24, 1947, P. L. 89, sec.
14(14), 20 PS §180.14(14), provides, inter alia, that
"a bequest of the personal estate of the testator, or any
bequest of personal property described in a general
manner, shall be construed to include any personal
estate, or any personal estate to which such description
shall extend, as the case may be, which he shall have

power to appoint in any manner he shall think proper, and shall operate as an execution of such power".

There is no doubt that under the statute, a general residuary clause, even without any reference to a power of appointment, is sufficient to exercise a general power of appointment. However, the phrase "which he shall have power to appoint in any manner he shall think proper" cannot be ignored. It may be that the sole purpose of the phrase is to except from the statute special powers of appointment as opposed to general powers. It may also be argued that the purpose of the phrase is to except from the statute any power which is limited either as to who may be its beneficiaries or as to the technical manner of its execution. The phrase is so broad that it compels the adoption of the latter conclusion.

The Act of June 4, 1879, P. L. 88, now repealed, was the forerunner of the present statute. In construing that act, our Supreme Court held that it applied only to powers of appointment which were unrestricted or absolute, depending solely on the will of the donee, and that the act in no way enlarged the powers: Garman v. Glass, 197 Pa. 101, 104, 46 Atl. 923 (1900). While the court in Garman does not deal with the narrow issue in the instant case, the language seems necessarily to include it. See also Biddle's Estate, 54 Montg. 222 (1938), reversed on other grounds, 333 Pa. 316, 5 A. 2d 158 (1939).

The only circumstance which permits an exception to this rule is illustrated by Lafferty's Estate (No. 1), 311 Pa. 455, 167 Atl. 44 (1933). There, the power of appointment was limited to a designated class of persons. The fund was bequeathed to those persons by name, but without any reference to the power of appointment. The Supreme Court, in its opinion, reaffirmed that the Act of June 4, 1879, P. L. 88, referred only to unrestricted powers of appointment. But the

court did carve out an exception to the effect that a limited power may also be exercised without a direct reference to the creating power by a clause which names all the members of the permitted class as beneficiaries. The exception should be held to its peculiar facts, and is no ground for this court carving out a new exception.

More recently, the Supreme Court has stated: "We, therefore, conclude that the Act of April 24, 1947, P. L. 89, sec. 14, 20 PS §180.14(14), applies only when the donee has the power to appoint in any manner he shall think proper . . .": Jeffers Estate, 394 Pa. 393, 399, 147 A. 2d 402 (1959).

It is concluded that the statute referred to above does not compel the court to find that Mrs. Brooks exercised the power of appointment.

Brooks argues that the reason will draftsmen use the specific reference clause is to prevent an inadvertent exercise of the power by a general residuary clause under the provisions of section 14(14) of the Wills Act, and that this was not an inadvertent act because Mrs. Brooks knew that she had the power. But this argument is selfdefeating, for Brooks is now asserting that a general residuary clause with a reference to property "of which I may have a power of appointment" should be considered an exercise of a power which is exercisable only by specific reference to testator's will. The residuary clause in Mrs. Brooks' will is a stock phrase to be found in many wills. It shows no considered act by Mrs. Brooks, and may indeed be the very inadvertent act that Schede hoped to avoid by the use of the specific reference clause.

Nor is it controlling that Mrs. Brooks knew that she had a general power of appointment and intended to exercise it. Her intent may be a factor, but it is with the provision of the will of Albert W. Schede that this court is presently concerned, and in interpreting

that will, it is his intent that must control. It was his intent that the power be exercised only by specific reference to his will.

Even if the court were to conclude that Mrs. Brooks' intent was controlling, it is not at all clear what that intent was. Since, as Brooks points out, she was familiar with the power, it is reasonable to assume that she was familiar with the specific reference requirement which is a part of that power.

Brooks relies on two Pennsylvania cases to support his argument that the donee of a power need not comply fully with the requirements set forth by the donor in order effectively to exercise a power. In Porter v. Turner, 3 S. & R. 108 (1817), the donor created a power of appointment exercisable "by any writing under hand and seal, executed in the presence of two or more creditable witnesses". The donee signed a letter which was not attested, and nine days thereafter signed a codicil which was attested under seal. The codicil did not relate to the power of appointment. The court held that the power had been properly exercised. However, Porter is distinguishable from the instant case. Although the power was improperly exercised in the letter in Porter, the letter was later attached to and became part of a properly executed codicil, thereby becoming properly executed also. In Porter, the fact that the donee intended to make an appointment under the will was, in the court's words, "certain". It is not certain in the instant case. The court further found that the appointment had been ". . . deliberately and solemnly made; and as it is attended with all the checks . . . required by the testator, against fraud and imposition, I feel a strong inclination to support it . . .": page 113. The same cannot be said in the instant case.

In Hacker's Appeal, 121 Pa. 192 (1888), the court found that a dash after a signature was a seal, and that the requirement of a sealed writing for the exer-

cise of the power had been met. The case has limited relevance to the issues here. Nor is there anything in the other citations presented by Brooks which would compel a finding that Mrs. Brooks has substantially complied with the requirements of the Schede will.

It is here held that Mrs. Brooks did not effectively exercise her power of appointment. . . .

And now, December 22, 1965, the account is confirmed nisi.

OPINION SUR EXCEPTIONS TO ADJUDICATION

KLEIN, P. J., April 7, 1966.—Testator, Albert W. Schede, died in 1957. He placed the residue of his estate in trust, giving the income to his wife, Lucille (referred to in the will as Lucile) for life. He directed that:

[Fourth] "(d) Upon the death of my wife, the principal thereof shall be paid over and distributed unto such person or persons, excluding herself, her estate or her creditors, as my wife may by her last will and testament or any writing in the nature thereof designate and appoint by specifically referring to this Will, and upon her failure so to do, the trust shall continue and shall be divided into two separate trusts hereinafter referred to as Trust A and Trust B".

Lucille married Bernard F. Brooks on August 28, 1958. Less than three months later, she executed a will, in which she provided:

"*Fourth*: I give, devise and bequeath all of the rest, residue and remainder of my property, both real and personal of every kind and nature and of which I may have a power of appointment to my husband, BERNARD F. BROOKS absolutely and forever".

Lucille died in 1965. Her surviving husband now lays claim to the residue of her former husband's estate.

Judge Saylor, in a well-considered adjudication, ruled that Lucille failed to effectively exercise the

power of appointment which she had under item fourth of Albert W. Schede's will.

We are in full agreement with his conclusions.

The power of appointment conferred on testator's widow was limited, in that: (1) She could not appoint in favor of herself, her estate or her creditors; (2) it had to be exercised by her last will and testament or any writing in the nature thereof; and (3) in making the appointment, she had to specifically refer to testator's will. Hence, she had a special, not a general, power of appointment.

The law is settled beyond question that in order to be effective, the exercise of a power of appointment has to be made strictly in accordance with the directions of the creator of the power. See Pepper's Will, 1 Parson 436 (1850), and the cases cited therein. In Price's Estate, 27 Dist. R. 561 (1918), our late distinguished colleague, Judge John Marshall Gest, said:

"The donor of a power, inasmuch as he is disposing of his own property, may prescribe whatever ceremonies he pleases for its execution; and although these may be perfectly arbitrary, yet, being required by the creator of the power, they can be satisfied only by a strictly literal and precise performance of them: Slifer v. Beates, 9 S. & R. 166, at page 181; Rutland v. Wythe, 10 Cl. & Fin. 425".

This rule was reaffirmed by our Supreme Court in Windolph Trust, 374 Pa. 81 (1953), in which the court held that in order to constitute a valid exercise of a special power of appointment over the corpus of a trust, the power must be exercised in conformity with the specific requirements prescribed by the instrument creating the power.

We are also in full accord with the auditing judge's conclusion that the provision of section 14 of the Wills Act of April 24, 1947, P. L. 89, has no application to the present case, because the donee was possessed of a

special and not a general power of appointment, and could not appoint in any manner she thought proper, as required by the statute. As pointed out in the adjudication, this is squarely decided in Jeffers Estate, 394 Pa. 393 (1959).

It is crystal clear that in order to effectively exercise the limited power of appointment which was vested in her, the donee was under compulsion to specifically refer to the will of her husband, Albert W. Schede. This she failed to do. Hence, her attempted exercise is ineffectual.

There is a second and equally persuasive reason for supporting Judge Saylor's decision. Testator not only stipulated that his widow must, in exercising her power, "specifically refer" to his will; he went much further. He directed that if she failed to do this, "the trust shall continue and shall be divided into two separate trusts hereinafter referred to as Trust A and Trust B". The direction as to the method of exercising the power was, therefore, not just a casual provision; it was mandatory, and sanctioned by an alternative gift upon failure of strict compliance with the precisely defined method of exercise.

Lucille A. Brooks had at all times full knowledge of the contents of her deceased husband's will. In fact, she was both coexecutrix and a trustee of his estate, and counsel stipulated for the record that she knew she had this power and was well aware of the property subject to the power of appointment.

She married Bernard F. Brooks, the exceptant, on August 28, 1958, and made her will on November 21, 1958. It would have been indelicate, to say the least, for this grandmother to appoint to her newly acquired spouse the estate of her recently deceased husband by specific reference thereto. Certainly, it is not unreasonable to assume that she purposely refrained from executing the power she had under her deceased hus-

band's will, feeling that it would be more natural and in better taste for her to favor his daughter and her own mother and grandchildren over her new husband, to whom she had been married for less than 90 days.

It is futile, however, for us to speculate as to her intentions. Her action speaks for itself. She did not exercise the special power given to her in the manner prescribed by the instrument creating the power. Consequently, the alternative provisions become effective.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.